**R & R EXPRESS, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2011.

Decided Feb. 8, 2012.

---

Charles L. Potter, Jr., Pittsburgh, for petitioner.

Clinton G. Smith, Jr., Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and SIMPSON, Judge, and McCULLOUGH, Judge.

OPINION BY President Judge LEADBETTER.[1]

Taxpayer, R & R Express, petitions this court for review of the order of the Board of Finance and Revenue (Board), which sustained the assessment of additional tax and interest under the Motor Carriers Road Tax Act (Act), 75 Pa.C.S. §§ 9601–9622, following an audit of Taxpayer for the period April 1, 2001, through March 31, 2005. Due to Taxpayer's inadequate record-keeping, the determination of additional tax liability rested, in part, on estimates of unreported miles and fuel purchases. Because Taxpayer purchased all fuel at retail, it contends that the Board erred in failing to provide it with any credit for taxes paid on the estimated fuel use. After review, we affirm.

The Act imposes a tax on fuel consumed in Pennsylvania by qualifying motor vehicles, which includes trucks and tractor trailers. See 75 Pa.C.S. § 9603. In calculating the tax, credit is given for tax paid on fuel purchased in this Commonwealth. 75 Pa.C.S. § 9604(a). In order to administer and effectuate the imposition and collection of fuel taxes on interstate carriers, Pennsylvania joined the International Fuel Tax Agreement (IFTA).[2] Pursuant to the IFTA, a motor carrier based in Pennsylvania files one tax return with the Commonwealth, its "base" jurisdiction, on which the tax due to all participating jurisdictions is reported and paid. The Commonwealth, as the base jurisdiction, then distributes

1. This case was assigned to this opinion writer before she completed her term as President Judge on January 6, 2012.

2. See 75 Pa.C.S. §§ 2102–2105.

motor fuel use taxes to the other member jurisdictions in which the taxpayer traveled and incurred liability.[3]

Because this matter turns on the nature of the evidence required to obtain a credit for taxes paid, we will first review the relevant statutory, regulatory and IFTA provisions, beginning with the Act, which provides:

### § 9603. Imposition of tax

(a) **General rule.**—Every motor carrier shall pay a road tax equivalent to the rate per gallon currently in effect on Pennsylvania liquid fuels ... as provided in section 9004(a), (b), (c) and (d) (relating to imposition of tax, exemptions and deductions), calculated on the amount of motor fuel used in its operations on highways within this Commonwealth....

### § 9604. Credit for motor fuel tax payment

(a) **General rule.**—Every motor carrier subject to the tax ... shall be entitled to a credit on the tax, equivalent to the rate per gallon of the Pennsylvania tax which is currently in effect, on all ... motor fuel purchased by the carrier within this Commonwealth for use in its operation either within or without this Commonwealth and upon which ... motor fuel the tax imposed by the laws of this Commonwealth has been paid by such carrier. *Evidence of the payment of the tax in such form as may be required by, or is satisfactory to, the department shall be furnished* by each carrier claiming the credit.... [Emphasis added].

75 Pa.C.S. §§ 9603, 9604. With respect to record keeping, the Act provides:

### § 9610. Records

Every motor carrier shall keep such records, in such form as the department reasonably may prescribe, as will enable the carrier to report and enable the department to determine the total number of miles traveled by its entire fleet of qualified motor vehicles, the total number of miles traveled in this Commonwealth by the entire fleet, the total number of gallons of motor fuel used by the entire fleet and the total number of gallons of motor fuel purchased in this Commonwealth for the entire fleet....

*Id.* at § 9610. *See also* 61 Pa.Code §§ 313.12, 313.13 (requiring, respectively, that every motor carrier keep satisfactory records of miles traveled both within and without the State and the fuel used within and without the State). Section 313.14 of Title 61 of the Pennsylvania Code, provides, in turn, that:

*Every motor carrier shall be prepared to present evidence to substantiate the credit claimed for payment of the liquid fuels tax* on motor fuels purchased within this Commonwealth. Such evidence *shall* consist of invoices of the vendor of the [fuel] which shall show the name and address of the motor carrier, the point of delivery, the date of each sale, the number of gallons of each sale, the total monetary value of each sale, and the license number or unit number of the motor vehicle being fueled. Sales made out to cash are not acceptable. The Department will have the right in order to further substantiate the credit claimed, to require a sworn affidavit from the vendor stating that it has sold the specified number of gallons of motor fuel to the motor carrier and that the

---

**3.** *See generally* the Department of Revenue's website: *http://www.portal.state.pa.us/portal/server.pt/community/motor_carrier_road_tax_ifta/14436* (and particularly Motor Carrier Road Tax/IFTA; rev–443.pdf [Pennsylvania International Fuel Tax Agreement and Motor Carriers Road Tax Compliance Manual] ).

liquid fuels tax has been paid on such motor fuel. [Emphasis added].

Finally, it bears noting that the IFTA Articles of Agreement provide that, in order to obtain credit for tax-paid purchases of fuel, the licensee must retain supporting paperwork, such as, *inter alia,* a receipt, invoice, credit card receipt, or transaction listing, showing evidence of the purchase and the amount of tax paid. *See* IFTA Articles of Agreement, Art. X R1000, Record, Exhibit A. Further, the receipt "must show evidence of tax paid directly to the applicable jurisdiction or at the pump. Specific requirements for these receipts are outlined in the IFTA Procedures Manual P560...." *Id.* at Art. X R1010.200.[4] Section P560 of the Procedures Manual is also very specific; it similarly provides that retail purchases *must be* supported by acceptable documentation, such as a receipt, invoice, credit card receipt, or transaction listing. Procedures Manual P560.100, Record, Exhibit A. Moreover, like administrative Regulation Section 313.14, the Procedures Manual requires

that a receipt contain a minimum detail of information, including the vehicle identity, purchaser's name, date of purchase, seller's name and address, amount purchased, and price paid per gallon or liter. *Id.* at P560.200, P560.300.[5]

As to the facts in the underlying appeal, the parties' stipulation reveals that Taxpayer is a Pennsylvania corporation engaged in business as a broker.[6] Taxpayer hauls steel and other commodities throughout the United States by soliciting loads from various entities; it then "hire[s] owner operators, many of which are signed to permanent leases and issued IFTA decals, to haul the loads." Stip. of Facts, ¶ 8. Taxpayer does not maintain bulk fuel facilities but purchases all fuel at retail locations. *Id.* at ¶ 9. As noted, Taxpayer was audited for the period April 1, 2001, through March 31, 2005. The Narrative Report of Audit Findings (Record, Exhibit B) indicates that the auditor found many reporting errors, which affected the accuracy of Taxpayer's reported miles, calculated fuel usage, and tax liability.[7] As a

---

4. The Procedures Manual also provides that each jurisdiction "will allow full credit for tax paid purchases, and any excess of tax paid over tax liability in any member jurisdiction will be credited in full to the licensee's tax liability in other member jurisdictions or to the licensee's account ledger as appropriate...." Procedures Manual at P1070.

5. The emphasis on record keeping is also apparent in Section P550.100, which states: "The licensee must maintain complete records of all motor fuel purchased, received, and used in the conduct of its business." *Id.*

 The Department's website contains a printable "[IFTA] and Motor Carriers Road Tax Compliance Manual." Section X of the manual (pertaining to Record Keeping Requirements) provides, *inter alia,* that every carrier "must maintain complete records of all fuel purchases," thereby echoing the statute, regulations, Agreement and Manual regarding the type of information which should be collected and retained.

6. Our standard of review in this matter is *de novo. Glatfelter Pulpwood Co. v. Commonwealth,* 19 A.3d 572 (Pa.Cmwlth.2011).

7. While not all-encompassing, the Board summarized these deficiencies as follows:

 Pursuant to the Audit Narrative, the drivers omit much of the required information from the trip reports. The auditor noted that some drivers even fail to turn in the trip reports. In addition, the auditor noted that many trips taken are recurring trips and when Petitioner enters the origin and destination points into the program, a set of miles will be displayed on the screen for that particular trip. The auditor found that the predetermined miles are used even if they differ from the driver's miles. The auditor also determined from an examination of the fuel tickets that trips were being taken that were not reported. With regard to fuel purchases, the auditor noted that various tickets either contained no date, unit number and/or purchase location.

result, the auditor, using the records available, calculated margins of error, and audit techniques to estimate unreported but traveled mileage, determined a figure for additional traveled but unreported miles. In addition, where the calculated m.p.g. was too high based upon the data reported (leading to the assumption that errors in reporting had occurred), the auditor used the statutory rate of 4.0 m.p.g. to determine jurisdictional mileage/fuel consumption; the statutory mileage rate was also used where mileage was clearly traveled but fuel had not been reported.[8] The auditor stated in his narrative:

> As already noted, detailed on Worksheets 3 and 4 are the reported total miles, miles reported by Balkan Express [an affiliated company with an Ohio IFTA license], and unreported miles for each unit decaled in the test periods. The auditor then added on these worksheets the reported total fuel, from Schedule 14, for each decaled unit, and calculated the reported m.p.g. for each unit. The auditor then calculated fuel at the statutory 4.0 m.p.g. for units with reported m.p.g. factors in excess of 7.0 miles per gallon and for units for which no fuel was reported. The 4.0 m.p.g. was used due to a lack of complete records being maintained for these units, as evidenced by the high m.p.g. factors or total lack of fuel records. This is in accordance with [75 Pa.C.S. § 9609.] This states that with a lack of records it is deemed that one gallon of fuel is consumed for each 4 miles of travel . . . .

Board's decision and order at 2.

8. Because the tax is imposed upon the amount of fuel used by the taxpayer while operating on highways in the Commonwealth, the Act provides a default average m.p.g. to be used when the taxpayer's records are inadequate. Specifically, Section 9609 states: "In the absence of adequate records or other evi-

Auditor's report at 24, Record, Exhibit B. There is no dispute that the auditor did not give Taxpayer credit for paying tax on the additional gallons of estimated fuel consumed or where fuel tickets produced by Taxpayer lacked required information such as the unit number or date of purchase.

Based upon the audit, the Department issued a notice of determination, setting forth a tax deficiency of $313,257.50 plus interest of approximately $131,000. Taxpayer appealed and both the Board of Appeals and the Board of Finance and Revenue sustained the determination. In finding no merit to Taxpayer's assertion that it had paid tax on all fuel purchased (and, therefore, was presumably entitled to a credit for taxes paid on the fuel determined to have been consumed), the Board of Finance and Revenue noted that the relevant statutory, regulatory and IFTA authority requires maintenance of detailed records of fuel purchases and many of Taxpayer's fuel receipts lacked the required information. This appeal followed.

█ On appeal, Taxpayer essentially argues that since it paid tax on all fuel purchased during the audit period, the Board erred in failing to credit it for taxes paid on the additional, estimated fuel consumed. According to Taxpayer, the sampling method required by the IFTA Audit Manual should have been used to determine a fuel tax credit. Taxpayer argues:

> All fuel used by Taxpayer's vehicles during the audit period was purchased from fuel retailers and all applicable tax-

dence satisfactory to the department showing the number of miles operated by a motor carrier's qualified motor vehicles per gallon of motor fuel, any such qualified motor vehicle shall be deemed to have consumed one gallon of motor fuel for each four miles operated." 75 Pa.C.S. § 9609.

es were paid on those purchases.... The auditors determined the amount of the additional tax by concluding the fuel consumed in unreported miles was untaxed. Because Taxpayer's operators failed to turn in trip reports and fuel receipts for all miles driven, Taxpayer was given no credit for taxes paid on the fuel purchased and consumed to drive those miles....

[T]he audit data gathered concerning miles driven by state, fuel purchases by state and miles per gallon could have been applied to the unreported miles driven. This data could be applied to the unreported miles to arrive at a credit for fuel purchased and consumed for those miles. This is the same approach that the auditors used to arrive at the fuel tax due on unreported miles. If this methodology, based on the auditor's own data, is employed to estimate a fuel credit for the Taxpayer, then the state would not be unjustly enriched by receiving tax twice on the same gallon of fuel.

Section A530 of the IFTA Audit Manual requires that all audits employ sampling to arrive at the audit results. (Stipulation of Facts, Exhibit A)[.] [A] sampling should be applied to arrive at fuel tax credits where the audit is assessing tax to the Taxpayer for miles not reported by the operator but for which tax was paid at the pump.

It would be a simple matter to use the audit data to create an average rate of tax and credit that tax to the various states in the audit on a pro rata basis. This approach would somewhat mitigate the multiple taxation that accrues under the current audit methodology. If this technique is applied, the deficiency is reduced to zero.

Taxpayer's brief at 10–11. Taxpayer contends the current assessment results in an unconstitutional double taxation.

According to the Commonwealth, Taxpayer was given credit for tax paid on all properly documented purchases. The Commonwealth further notes that the Department of Revenue lacks statutory, regulatory and IFTA authority to allow credit for unsubstantiated purchases and to do so would violate the requirements imposed by the IFTA Agreement on member states.

■■■ We begin by noting that when challenging an assessment, the taxpayer bears the burden of demonstrating that the tax was improperly assessed. *Fiore v. Commonwealth,* 668 A.2d 1210 (Pa. Cmwlth.1995), *aff'd,* 547 Pa. 357, 690 A.2d 234 (1997). We also accord an agency deference in interpreting the statutes that it enforces. *Tool Sales & Service Co., Inc. v. Commonwealth,* 536 Pa. 10, 637 A.2d 607 (1993). An agency's interpretation should not be overturned unless it is clearly erroneous. *Id.*

While Taxpayer's approach, that of using available information and audit techniques to arrive at an estimate of taxes paid on fuel consumed, has a logical appeal, it is completely contrary to the tax scheme established by the Act and IFTA. Both the Act and IFTA require detailed record keeping. Moreover, all provisions pertaining to credit for taxes paid expressly mandate that the claimed credit be supported by adequate documentation of payment, including the identity of the carrier, the date and place of sale, the amount purchased, price paid and identity of the vehicle being fueled. The base jurisdiction is specifically directed in the IFTA Audit Manual to disallow any claim for tax credit when "tax paid fuel documentation is un-

available." IFTA Audit Manual A500.200, Record, Exhibit A.[9]

Strict compliance with the reporting framework set forth in the statutory scheme and IFTA provisions not only enables the Department to determine a taxpayer's in-state liability, but allows it to accurately administer its duties under IFTA, correctly determining the amount of tax owed to other member jurisdictions and remitting the same. As the introduction to the Audit Manual states:

> The purpose of these guidelines is to establish a uniform procedure for [IFTA] jurisdictions to follow in establishing jurisdiction audit procedures, employing and supervising audit staff, planning and conducting audits, and reporting audit findings. . . .

> The IFTA requires licensees to pay fuel taxes to each participating jurisdiction commensurate with the distance traveled in each jurisdiction. To fulfill this requirement, an effective and uniform audit program is necessary to verify the integrity of the IFTA tax returns. It is essential that the basic audit program adopted by each jurisdiction be uniform and thorough to insure accuracy. It is each jurisdiction's responsibility to provide an adequate audit staff, to conduct an accurate audit in a professional manner, and to submit a full report to each member jurisdiction in which the licensee operated.

IFTA Audit Manual A100, Record, Exhibit A. Thus, Taxpayer's approach is not only in direct violation of the governing authority, but fails to satisfy the goal that member jurisdictions calculate tax liability in a uniform manner. We cannot substitute our judgment about the matter for the

clear terms of the Act, Agreement and accompanying regulations and guidelines.

In reaching our conclusion, we also reject any suggestion that an unconstitutional taxation has occurred. The caselaw relied upon by Taxpayer in support of this claim is inapposite, primarily addressing the Commerce Clause and multiple taxation of goods in interstate commerce. Here, we are not dealing with a discriminatory tax scheme. Rather, we are faced with a Taxpayer who has failed to comply with clear directives regarding documentation of business activities and due to that lack of adequate documentation has failed to meet its burden of proving tax paid fuel use.

■ Finally, Taxpayer maintains that the Board should have looked to the post-audit period to determine its tax liability. In support, Taxpayer notes that the IFTA Articles of Agreement and Audit Manual require that the best available evidence be used to determine the correct amount of tax due. According to Taxpayer, it improved its record-keeping in the post-audit period, and its equipment and operations during that time-frame were similar to that of the audit period. Taxpayer further maintains that with more accurate and compliant record-keeping in the post-audit period, its operations generated a minimal amount of tax due beyond that which was paid in connection with its retail purchases of fuel. Using its post-audit reports to calculate the tax due for the period under audit, Taxpayer requests that,

> the court[ ] accept post audit period reports and calculate the taxpayer's liability by applying the rate of additional tax per mile from these reports to the audited unreported mileage in the periods before the court. Using that method

9. In comparison, when the records are inadequate or fail to support the tax return, the base jurisdiction is authorized to estimate fuel use in determining tax liability. *Id.* at A500.100.

the taxpayer claims its liability would be reduced from the audited liability of $313,257.50 to $27,186....

Stip. of Facts, ¶ 16.

In the Stipulation of Facts, the Commonwealth does not agree that use of post-audit reports would reduce Taxpayer's liability to $27,186. Rather, the Commonwealth avers that applying post-audit return information to the audited period would result in a liability of $272,155. The Commonwealth contends that there is no statutory or regulatory authority to support application of post-audit period data to calculate tax due and such information is irrelevant. We agree. The relevant and controlling law explicitly requires documentation, not estimates of the sort proposed by Taxpayer, no matter how accurate we may believe such estimates to be, nor how sympathetic we may be to Taxpayer's plight.

Based upon the foregoing, the order of the Board is affirmed.

Judges LEAVITT and BROBSON did not participate in the decision in this case.

## ORDER

AND NOW, this 8th day of February, 2012, the order of the Board of Finance and Revenue in the above-captioned matter is hereby affirmed. Unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i), this order shall become final.