**SENEX EXPLOSIVES, INC., Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2012.

Decided Dec. 19, 2012.

Charles L. Potter, Jr., Pittsburgh, for petitioner.

Clinton G. Smith, Jr., Senior Deputy Attorney General, Harrisburg, for respondent.

BEFORE: SIMPSON, Judge, and McCULLOUGH, Judge, and COLINS, Senior Judge.

OPINION BY Judge SIMPSON.

Senex Explosives, Inc. (Taxpayer) asks to be saved from the consequences of its inadequate record-keeping to avoid what it claims to be double taxation. Because Taxpayer's request for special treatment implicates a complex, nationwide tax and reporting system, careful attention is required.

Specifically, Taxpayer contests the tax liability calculated by the Department of Revenue (Department) on a Notice of Determination of fuel tax due under the Motor Carriers Road Tax Act (Act)[1] pursuant to its International Fuel Tax Agreement (IFTA)[2] license. Taxpayer argues that it is entitled to a credit for the taxes paid on bulk-fueled vehicles, and challenges the audit methodology as not using the best available information reflecting use of fuel by qualifying vehicles. Taxpayer also contends the Department erred in including

---

1. 75 Pa.C.S. §§ 9601–9622.

2. IFTA is a multi-jurisdictional agreement relating to the mutual administration of fuel usage taxes applicable to entities operating heavy trucks (mostly over 26,000 pounds). Membership in IFTA was required by 49 U.S.C. § 31705.

miles traveled by its drilling rigs in calculating fuel consumed, as such vehicles are exempt from IFTA.

This dispute involves interpreting IFTA regarding tax-paid credits for bulk-fueled vehicles, and allegedly improper calculation of fuel consumption by including miles traveled by vehicles exempt from tax (non-qualifying vehicles). The Board of Finance and Revenue (Board) agreed with the Department's determination that a credit is not supported by Taxpayer's records. The Board addressed the exempt vehicles in terms of a refund for off-road use. Upon *de novo* review, we affirm the Board as to the credit issue, and reverse as to the inclusion of exempt vehicles in the calculation of tax liability.

## I. Background

The Act imposes a tax on fuel consumed in Pennsylvania by qualifying motor vehicles, which includes certain trucks and tractor-trailers. *See* 75 Pa.C.S. § 9603; *R & R Express v. Commonwealth,* 37 A.3d 46 (Pa.Cmwlth.2012). In calculating the tax, credit is given for tax paid on fuel purchased in this state. 75 Pa.C.S. § 9604(a); *R & R Express.* In order to administer and effectuate the imposition and collection of fuel taxes on interstate carriers, Pennsylvania joined IFTA. *R & R Express.* Pursuant to IFTA, a motor carrier based in Pennsylvania files one tax return with the Commonwealth, its "base" jurisdiction, on which the tax due to all participating jurisdictions is reported and paid. *Id.* Pennsylvania, as the base jurisdiction, then distributes motor fuel use taxes to the other member jurisdictions in which the taxpayer traveled and incurred liability. *Id.*

IFTA governing documents include the Articles of Agreement (Articles), which incorporate the Audit Manual and Procedures Manual. Stipulation of Facts (Stipulation) ¶ 4.

Taxpayer, licensed under IFTA, operates a drilling and blasting business. Taxpayer's work consists of drilling blast holes for explosive placement as part of road and railway construction. As a licensee, Taxpayer files quarterly tax reports regarding its fuel use. The Department audits the quarterly reports for compliance with IFTA. The Department conducted an IFTA Road Tax audit of Taxpayer for the period from July 1, 2002, to June 30, 2006 (Audit).

The auditor found Taxpayer reported travel in 16 jurisdictions during the audit period. The Audit concluded Taxpayer was not in compliance with IFTA record-keeping requirements related to proof of tax paid fuel credit and had no system of measuring the fuel used in bulk fueling tanks as required by the Act. The disallowed credits mainly related to Taxpayer's operation of the bulk fueling tanks. This was because Taxpayer had no meters on the tanks before 2005. Taxpayer also did not record the amount of fuel moving from the bulk tank to any individual vehicle. Taxpayer had both qualifying and non-qualifying vehicles which were fueled by the bulk tank; therefore, the auditor had no means of apportioning the amount of consumed tax paid fuel between qualifying and non-qualifying vehicles. Thus, the Audit disallowed credit for 364,798 gallons of tax-paid Pennsylvania diesel fuel disbursed from Taxpayer's bulk storage tanks absent records identifying the specific vehicle or type of vehicle being fueled.

In addition, Taxpayer's drivers purchased gasoline and diesel fuel at public service stations with Taxpayer-issued credit cards. However, the purchases were not always identified to a specific vehicle, and Taxpayer did not assign credit cards to specific vehicles. Therefore, there was

no means of identifying for which vehicle fuel was purchased.

The Department does not dispute that Taxpayer paid all taxes on the fuel in its bulk storage tanks. However, as the bulk tank also fuels non-qualifying vehicles, and the fuel disbursed could not be attributed to specific vehicles and is not the sole source of fuel, the Department determined the tax liability using mileage of qualifying vehicles without permitting a credit for miles traveled on bulk fuel. Essentially, the Audit disallowed tax credits given the lack of records to show the allocation of fuel to each qualifying vehicle.

The Audit also revealed that Taxpayer failed to follow required procedures in decaling its vehicles. For example, in 2006 Taxpayer obtained 48 IFTA decals. Of them, Taxpayer placed 13 of the decals on vehicles operated as "special mobile equipment" (SME) that perform drilling functions. See Stipulation, Ex. A, Narrative Report of Audit Findings, p. 2. As a part of the auditing method, the auditor included mileage of Taxpayer's IFTA-decaled drilling rigs in calculating the fuel consumed. Although drilling rigs are SME, and should be exempt from tax, Taxpayer placed IFTA decals on this equipment and used the equipment in multiple jurisdictions. Because Taxpayer placed decals on the SME, the auditor included the miles in the Audit. Thus, the auditor included SME in its calculation of tax liability.

As a result, the Audit concluded Taxpayer failed to report 79,642 miles for the SME drilling rigs. Taxpayer did not report miles traveled by SME, believing SME-licensed vehicles are exempt from taxable miles. The auditor applied the statutory rate of four miles per gallon and calculated the fuel tax liability according to the mileage shown by odometers on SME and qualifying vehicles. See R & R Express, 37 A.3d at 50 n. 8 (explaining meth-od of calculation using statutory default average m.p.g.).

Following the Audit, the Department issued a Notice of Determination of tax due relating to Taxpayer's reporting under its IFTA license. Taxpayer was assessed tax in the amount of $127,405.03, plus interest in the amount of $32,267.06.

Taxpayer filed a Petition for Redetermination with the Department's Board of Appeals, appealing the assessment. The Board of Appeals sustained the assessment in its entirety. Taxpayer timely appealed the Board of Appeals' decision to the Board.

On October 16, 2007, the Board issued an order sustaining the Board of Appeals Decision, (BF & R Docket No. 0700689). The Board addressed Taxpayer's contentions that all relevant motor fuel taxes were paid to suppliers at the time of purchase, and that a significant amount of tax paid fuel was consumed in off-road activities.

The Board concluded that the Audit was conducted in a reasonable manner given the lack of documentation to support reported figures. The Board recited the statutory and regulatory record-keeping requirements under the Act and IFTA. The Board determined that Taxpayer did not maintain proper records as required by the Act and regulations under 61 Pa. Code §§ 313.12–.13. Absent fuel logs or other proper documentation as required by the IFTA Procedures Manual, the Board could not determine the amount of the credit to which Taxpayer could be entitled since Taxpayer has both qualifying and non-qualifying vehicles that used the bulk fuel tank. The Board thus sustained the order below.

Taxpayer timely petitioned this

Court for review of the Board's Order.[3] In its petition, Taxpayer asserts it paid tax upon all fuel used, either at the time of purchase at the public service stations, or when purchased for the bulk fuel tanks.

■ The parties filed the Stipulation, which, together with the exhibits, including the Audit, is the record before this Court.[4]

Relevant to this proceeding, the parties stipulated as follows:

In this matter [ ] Taxpayer contests the amount of tax [the Department] claims is due and relating to [T]axpayer's reporting under its [IFTA] license. Stipulation ¶ 3.

The Notice of Determination was issued by the [Department] following an audit of Taxpayer's reports which covered the period July 1, 2002 to June 30, 2006. In the Notice of Determination the additional tax due was found to be $127,405.03, and interest due as of the date of the Determination was found to be $32,267.06. The Notice of Determination followed an audit of [T]axpayer's records for this period.... Stipulation ¶ 3.

Taxpayer sought from the [Department] and was issued an IFTA license. Taxpayer filed quarterly tax reports during the period audited, and those reports were audited by the [Department]. Stipulation ¶ 5.

During the audit period audited, [Taxpayer] maintained bulk fuel storage tanks located on Taxpayer's property. At the location in Cuddy, PA, there is a 10,000 gallon above[-]ground low sulfur

diesel tank. At Home, PA location there is a 1,000 gallon above[-]ground tank for low sulfur diesel fuel. Stipulation ¶ 8.

[Taxpayer] paid Pennsylvania Fuels tax on all fuel deposited in and stored in bulk tanks. Stipulation ¶ 9.

[Taxpayer] also purchased gasoline and diesel fuel at public service stations in and outside Pennsylvania. These purchases were made using credit cards which [Taxpayer] had issued to its drivers. It was not part of [Taxpayer's] practice to issue credit cards to specific vehicles. Stipulation ¶ 10.

It is Taxpayer's position that it has been erroneously assessed Pennsylvania and other jurisdictions['] fuel consumption taxes and is therefore entitled to a reduction. Taxpayer also claims that all relevant excise and franchise tax was paid to its fuel suppliers when the fuel was purchased. Finally, a significant amount of motor fuel purchased was consumed in off-road activities. Stipulation ¶ 15.

Taxpayer believes and argues that IFTA Article of Agreement Section A540.200 requires that the audit should be completed using the best information available to the base jurisdiction. Stipulation ¶ 16.

Taxpayer would claim that subsequent to the Audit, it kept detailed records in compliance with the rules and regulations under IFTA. Stipulation ¶ 18.

---

3. This Court is entitled to the broadest scope of review when considering the propriety of an order of the Board of Finance and Revenue because, although we hear such cases in our appellate jurisdiction, we function essentially as a trial court. *Norris v. Commonwealth*, 155 Pa.Cmwlth. 423, 625 A.2d 179 (1993).

4. This Court may rule on the record made before it and on the stipulation of facts made by the parties. Pa. R.A.P. 1571. Although the stipulation of facts is binding and conclusive upon this court, we may nonetheless draw our own legal conclusions from those facts. *S. Pines Trucking v. Commonwealth*, 42 A.3d 1222 (Pa.Cmwlth.2012).

Taxpayer would claim that when proper records were kept, their operations generated a minimal amount of tax. *Id.* If called to testify, Taxpayer would claim that the equipment and operations in the post audit period were similar to the equipment and operations in the audit period. Stipulation ¶ 19.

*See* Stipulation.

Taxpayer challenges the Audit results, disallowance of credits, and audit methodology. Specifically, Taxpayer argues: (1) the Audit failed to properly account for fuel tax already paid either on bulk fuel or at the pump, and knowing the bulk fuel tax was paid, the auditors did not use the "best information available" to quantify liability; and, (2) many Taxpayer vehicles are exempt from the Motor Carrier Road Tax (Tax) as they are not "qualified motor vehicles" and are exempt as SME. The Commonwealth, Board of Finance and Revenue (Commonwealth), emphasizes the credit issue is separate from the exemption that would lead to a reduction in miles.

### A. Credit for Taxes Paid on Fuel Purchased

■ Taxpayer first contends the Commonwealth will be unjustly enriched by disallowing tax credits for taxes that were paid. Taxpayer represents that diesel fuel purchase invoices for bulk fuel deliveries during the audit period listed the appropriate taxes charged to Taxpayer, and show that the Tax was paid. Taxpayer argues there are no additional miles for the diesel fleet, and that the fuel purchased at the pump represents a miniscule portion of the fuel used.

Taxpayer also argues the Audit should have been compiled using the "best information available." *See* IFTA Section A540.200. Taxpayer asserts the quarterly reports it filed with the Department *after* the audit period covered similar equipment and operations, and thus best indicate the amount of Taxpayer's tax liability. As Taxpayer kept better records *after* the audit period, Taxpayer posits that those quarterly reports more accurately reflect fuel use, and should have been used to determine its tax credits during the audit period rather than strict proof of credits.

The Commonwealth contends that IFTA requires specific record-keeping in order to establish entitlement to credits for tax-paid fuel, both at the pump and for bulk fuel. On the merits as to the tax-paid credit, the Commonwealth relies upon this Court's recent decision in *R & R Express.* The Commonwealth argues that Taxpayer did not keep records to establish credits allegedly due, and that it failed to submit any records to substantiate its claimed retail purchases to support entitlement to credits.

The Commonwealth explains the Department has no authority to create credits that are not substantiated by the records required by IFTA and the Act. The auditors followed the IFTA Audit Manual and IFTA Procedures Manual when calculating the credits, given that the necessary records are absent. The Commonwealth also denies Taxpayer's allegations of double taxation. While IFTA and the Act attempt to offset any alleged inequity by permitting credits for tax paid on purchases both at the public pump, and as to private bulk fuel at the time of purchase, Taxpayer must prove those credits with the documentation required from all IFTA licensees and provided to all IFTA member states.

This Court is authorized to review decisions by the Board on the record made before it and the parties' stipulation of facts. *Id.* The Stipulation is thus binding on the parties and the Court, but the Court may draw its own legal conclusions. *Kelleher v. Commonwealth*, 704 A.2d 729

(Pa.Cmwlth.1997). We exercise the broadest scope of review, and review the case de novo. *Glatfelter Pulpwood Co. v. Commonwealth*, 19 A.3d 572 (Pa.Cmwlth.2011).

 Primarily, Taxpayer seeks a credit for fuel taxes that were paid on bulk fuel, which was used to fuel the majority of its fleet. When challenging an assessment, the taxpayer bears the burden of demonstrating that the tax was improperly assessed. *Fiore v. Commonwealth*, 668 A.2d 1210 (Pa.Cmwlth.1995), *aff'd*, 547 Pa. 357, 690 A.2d 234 (1997). We also accord deference to an agency in interpreting the statutes that it enforces. *Tool Sales & Service Co., Inc. v. Commonwealth*, 536 Pa. 10, 637 A.2d 607 (1993). An agency's interpretation should not be overturned unless it is clearly erroneous. *Id.*

As we recently held in *R & R Express,* and underscored in *Southern Pines Trucking v. Commonwealth*, 42 A.3d 1222 (Pa. Cmwlth.2012), a taxpayer cannot obtain credit for taxes paid on fuel purchased at retail, after taxpayer was audited and found to have a tax deficiency, where taxpayer failed to provide adequate documentation of tax paid on fuel purchased. We extend our analysis in those cases to the case before us.

As to credits for fuel taxes paid, the Act provides:

(a) **General rule.**—Every motor carrier subject to the tax ... shall be entitled to a credit on the tax, equivalent to the rate per gallon of the Pennsylvania tax which is currently in effect, on all ... motor fuel purchased by the carrier within this Commonwealth for use in its operation either within or without this Commonwealth and upon which ... motor fuel the tax imposed by the laws of this Commonwealth has been paid by such carrier. *Evidence of the payment of the tax in such form as may be required by, or is satisfactory to, the* *department shall be furnished by each carrier claiming the credit....*

75 Pa.C.S. § 9604 (emphasis added).

IFTA permits a credit as to bulk fuel purchases pursuant to Section R1020, entitled "Bulk Fuel Purchases," as follows:

.100 Storage fuel is normally delivered into fuel storage facilities by the licensees and fuel tax may or may not be paid at the time of delivery.

.200 A licensee may claim a tax-paid credit on the IFTA tax return for fuel withdrawn from bulk storage *only when the fuel is placed into the fuel tank of a qualified motor vehicle;* the bulk storage tank is owned, leased or controlled by the licensee; and either the purchase price of the fuel includes fuel tax paid to the member jurisdiction where the bulk fuel storage tank is located or the licensee has paid fuel tax to the member jurisdiction where the bulk fuel storage tank is located.

.300 The licensee's records must identify the quantity of fuel taken from the licensee's own bulk storage and placed in its qualified motor vehicles. Record keeping requirements for tax paid bulk fuel purchases are provided in IFTA Procedures Manual Section P570.

IFTA, Art. X, Section R1020 (emphasis added). Tax credits for tax paid on bulk fuel are thus only permitted as to fuel placed in qualifying vehicles, and not for tax paid on bulk fuel used in non-qualifying vehicles like SME.

Section P570 of the IFTA Procedures Manual requires details regarding the receipts and adequate record-keeping to distinguish fuel placed in qualified versus non-qualified motor vehicles. Specifically, in pertinent part, Section P570 provides:

The licensee shall maintain the following records:

.005 Date of withdrawal;

.010 Number of gallons or liters;

.015 Fuel type;

.020 Unit number; and

.025 Purchase and inventory record to substantiate that tax was paid on bulk purchases.

IFTA Procedures Manual, Section P570.400.

IFTA and the Act require evidence to substantiate any credits claimed.[5] IFTA Articles provide that to obtain credit for tax-paid purchases of fuel, the licensee must retain supporting paperwork, such as a receipt, invoice, credit card or transaction listing, as evidence of the purchase and the amount of tax paid. IFTA Art. X, Section R1000.

Here, Taxpayer sought a credit for tax paid on 364,798 gallons of fuel in the bulk fuel tank. There is no dispute that Taxpayer paid tax on all its bulk purchases. However, Taxpayer maintains both qualifying and non-qualifying vehicles, and Taxpayer did not keep sufficient records to show which vehicles were fueled by the bulk fuel purchase. The auditor attempted to establish fuel use on an individual vehicle basis, but the lack of "by-vehicle" documentation made it impossible to reconcile for accuracy.

Taxpayer, as the IFTA licensee, is required to maintain complete records of the fuel purchased, and is required to prove through its record-keeping any entitlement to credits for taxes paid. In the case of bulk fuel, record-keeping entails date of withdrawal and the unit number of the vehicle being fueled. Taxpayer lacks this crucial documentation. We follow our rationale in *R & R Express* and extend its application to bulk fuel purchases and credits here. Accordingly, as Taxpayer does not have the requisite records to substantiate entitlement to a credit for its bulk fuel purchases, the Board properly disallowed it.

Taxpayer submits that Department auditors should have estimated fuel use based on *subsequent* quarterly reports that are accurate representations of use, for similar equipment and travel to that of the audit period. We disagree. In *R & R Express* we noted that "[t]he base jurisdiction is specifically directed in the IFTA Audit Manual to *disallow any claim for tax credit* when 'tax paid fuel documentation is unavailable.' " *R & R Express*, 37 A.3d at 51–52 (emphasis added), quoting IFTA Audit Manual A500.200.

The reasons for this position were fully explained in *R & R Express* and *Southern Pines Trucking*:

> [w]hile Taxpayer's approach, that of using available information and audit techniques to arrive at an estimate of taxes paid on fuel consumed, has a logical appeal, it is completely contrary to the tax scheme established by the Act and IFTA [that] require detailed record-keeping.

---

5. *See* 61 Pa.Code § 313.14 stating:

> Every motor carrier shall be prepared to present evidence to substantiate the credit claimed for payment of the liquid fuels tax on motor fuels purchased within this Commonwealth. Such evidence shall consist of invoices of the vendor of the [fuel] which shall show the name and address of the motor carrier, the point of delivery, the date of each sale, the number of gallons of each sale, the total monetary value of each sale, and the license number or unit number of the motor vehicle being fueled. Sales made out to cash are not acceptable. The Department will have the right in order to further substantiate the credit claimed, to require a sworn affidavit from the vendor stating that it has sold the specified number of gallons of motor fuel to the motor carrier and that the liquid fuels tax has been paid on such motor fuel.

*R & R Express,* 37 A.3d at 51; *S. Pines Trucking,* 42 A.3d at 1229. Moreover, in *R & R Express* we specifically rejected the argument of using post-audit reports because that information was "the best available evidence. We stated:

> The Commonwealth contends that there is no statutory or regulatory authority to support application of post-audit period data to calculate tax due and such information is irrelevant. We agree. The relevant and controlling law explicitly requires documentation, not estimates of the sort proposed by Taxpayer, no matter how accurate we believe such estimates to be, nor how sympathetic we may be to Taxpayer's plight.

*R & R Express,* 37 A.3d at 53.

■ In addition, we reject the contention that the auditors' methods constitute double taxation. *See R & R Express.* First, Taxpayer cannot establish double taxation because its failure to comply with record-keeping requirements deprives it of acceptable proof of taxes paid for fuel ultimately consumed by qualifying vehicles alone. Second, the fuel tax (for which credit is sought) was paid on the purchase of the fuel, payable at the time and place of purchase, whether at the pump or to the supplier of the private bulk fuel tank. Here, in contrast, the current tax liability relates to the consumption of fuel. Thus, the objects of taxation are different. *See Commonwealth v. Monessen Amusement Co., Inc.,* 352 Pa. 120, 42 A.2d 158 (1945).

In sum, Taxpayer is not entitled to tax paid fuel credits without the requisite records. Proper record-keeping is Taxpayer's burden. The Department lacks the authority to offer credits for unsubstantiated fuel use.

6. *See* IFTA, Art. II, R212, Commentary.

## II. Exempt Vehicles

■ The Audit reflects that 14 of Taxpayer's vehicles are SME-licensed; their primary function is drilling, not transport. Taxpayer asserts the drilling rigs, licensed as SME, are not covered by IFTA, and thus not subject to tax. Taxpayer also contends the drilling equipment is exempt from the Tax because it does not meet the definition of a "qualified motor vehicle" under IFTA. Taxpayer argues that as to any exempt vehicles, it is entitled to "credit for any [fuel] purchases made."[6] Taxpayer notes the auditor admitted that non-qualifying vehicles fueled from the bulk tank, upon which all taxes were indisputably paid.

The Commonwealth acknowledges that SME are exempt under the Vehicle Code, 75 Pa.C.S. §§ 101–9805, but explains that the equipment is likewise removed from the decal provisions. Taxpayer purchased IFTA decals, which it properly placed on IFTA qualifying vehicles. However, Taxpayer also placed decals on the SME it claims is exempt, and thus was permitted to use SME on roads and highways outside Pennsylvania. Placing IFTA decals on the SME vitiates the exemption from IFTA, the Commonwealth contends, thus requiring Taxpayer to accept the duties associated with IFTA, including taxation.

■ Taxpayer bears the burden of proving an exemption from taxation applies. *Ernest Renda Contracting Co. v. Commonwealth,* 516 Pa. 325, 532 A.2d 416 (1987); *Vincent Const., Inc. v. Commonwealth,* 668 A.2d 289 (Pa.Cmwlth.1995). Mindful that tax exemptions are strictly construed,[7] we consider Taxpayer's claim for exemption.

7. *Adelphia House P'ship v. Commonwealth,* 709 A.2d 967 (Pa.Cmwlth.1998).

As Taxpayer framed the argument below and before this Court, its 14 drilling rigs are exempt from taxation because they are SME or do not fit within the definition of "qualifying vehicles." IFTA defines a "qualifying vehicle" as a vehicle "used, designed or maintained for the transportation of persons or property." IFTA, Art. II, R245. The drilling rigs are used for drilling, not transportation; therefore, they do not qualify.

SME are exempt from the Tax. *See* 75 Pa.C.S. § 2105(a)(7). SME are defined in the Vehicle Code as:

> vehicles which have machinery permanently attached [and] shall not carry a load, except for tools and parts necessary for the use and maintenance of the permanently attached machinery and are only incidentally operated or moved over the highway . . . The term includes, but is not limited to, ditch digging apparatus, well boring apparatus, earth moving and road construction and maintenance machinery.

75 Pa.C.S. § 102.

In the Narrative Report, the auditor notes "[Taxpayer] licensed the drills as SME vehicles; however, [Taxpayer] decaled the drills with and [sic] IFTA decal." *See* Stipulation, Ex. 1, Narrative Report, p. 6 of 13. Believing the SME were exempt from tax, Taxpayer did not include mileage traveled by SME in its reported taxable miles. Therefore, the auditor added 79,642 miles to the mileage traveled attributable to the SME mileage. The Audit thus treated the SME miles as subject to tax under IFTA, and part of Taxpayer's tax liability relates to SME miles.

The Vehicle Code provides that SME are exempt from taxation. Section 2105 explicitly provides that "the requirements of this chapter and Chapter 96 (relating to motor carriers road tax) do not apply" to SME. 75 Pa.C.S. § 2105. The Commonwealth concedes that Taxpayer had among its fleet 14 vehicles that qualify as SME and were so designated by the auditor in the Narrative Report of Audit Findings. Regardless of the exemption, the Commonwealth contends that since IFTA does not apply to SME, Taxpayer improperly placed decals on the SME so that they purport to be "qualifying" vehicles. We are not persuaded by the Commonwealth's construction of the Vehicle Code.

The statute is clear that IFTA does not apply to SME. Therefore, Taxpayer erred in placing decals upon them, and should not have done so. However, Taxpayer bore the detriment of its mistake by needlessly paying the Department for the decals.

The Commonwealth asserts that Taxpayer benefited from having IFTA-decaled vehicles in that such vehicles would be permitted to travel over the highways into other jurisdictions. This argument is unpersuasive for two reasons.

First, there is not sufficient information in the record to support an inference that such occurred. More particularly, although the Commonwealth argues the vehicles worked in other states, the Commonwealth did not prove *how* the SME vehicles reached the other states. Given the lack of any evidence establishing the SME were driven to the other states, and mindful of the difficulty attendant to such heavy equipment traveling on, as opposed to being transported over such roads, we decline to infer that the vehicles traveled over interstate highways to reach their out-of-state work destinations.

Second, the Commonwealth fails to explain why a decaling violation is punishable by a tax consequence, as opposed to some other administrative remedy. Indeed, Taxpayer already bore an administrative consequence in the form of unnecessary

decal fees. The Commonwealth seeks a second monetary consequence, but offers no explanation for why a decaling error justifies multiple penalties.

The Commonwealth cites no support for its view that the improper decaling of SME subjects those vehicles to tax and renders any exemption invalid. That would purport to condone the illegality of the improper labeling and let the decaling of vehicles dictate their status under IFTA and the Vehicle Code. Neither Taxpayer nor the Commonwealth can change the statute by conspicuous placement of a sticker. Placing a sticker on a vehicle does not alter its statutory status as exempt. As 14 vehicles are SME pursuant to the Audit, the better view is to conclude the SME and associated mileage are thus exempt from IFTA and the Tax.[8]

Taxpayer asserts the amount of the exemption can be calculated by removing the miles traveled by the exempt vehicles during the audit period from the fuel use calculation. The total miles pursuant to the Audit were 1,272,015. *See* Stipulation, Ex. A, Schedule 2. Taxpayer represents the miles for the SME drill rigs were 74,592[9] or 5.9% of the total miles. The SME percentage times the tax assessed (5.9% multiplied by $127,405) is $7,516.90.

The auditor did not properly calculate the tax because the Audit included mileage of SME, which is exempt. For the foregoing reasons, we reverse the Board to the extent it permitted taxation of SME, and the tax liability should be reduced by the

charges corresponding to SME miles, including any associated interest charges.

### III. Conclusion

Taxpayer did not substantiate entitlement to tax paid credits because it did not maintain the requisite records to establish either a retail credit or a bulk-fuel credit. We also hold Taxpayer's arguments challenging the auditor's method in assessing tax liability lack merit for the reasons aptly explained in *R & R Express*. Accordingly, we affirm the Board with regard to the tax-paid credit issue.

With regard to the claimed exemptions for SME vehicles, we agree with Taxpayer that SME mileage should not have been included in the Audit. Pursuant to the Vehicle Code, SME vehicles used for drilling are not subject to tax, and Taxpayer is not required to pay fuel tax on them merely because it improperly placed IFTA decals upon them. Therefore, we reverse the Board's decision to the extent it permitted SME's inclusion in the calculation for tax liability, and order the Taxpayer's attendant tax liability and interest to be reduced accordingly (or by $7,516.90, plus interest).

Judge BROBSON did not participate in the decision in this case.

### *ORDER*

**AND NOW,** this 19th day of December, 2012, the order of the Board of Finance

---

8. Taxpayer also asserts that its trucks are not subject to the Act because they are not qualified motor vehicles under Section R245 of IFTA. However, this argument was raised for the first time in Taxpayer's brief and was not preserved. Moreover, given our resolution of the SME issue, we need not address it here.

9. We note the Board of Appeals' decision states the unreported miles for the 14 drilling rigs is 79,642, a discrepancy of almost 5,000

miles to the representation of Taxpayer's counsel. *See* Stipulation, Ex. D, Bd. of Appeals Decision, 8/22/2007, at 1. As the parties did not stipulate to a specific figure, we defer to the parties to draw any error in the number of miles attributable to SME (by which the liability in the Audit shall be reduced) to our attention so it may be corrected in the exceptions process.

and Revenue is **AFFIRMED IN PART, AND REVERSED IN PART** in accordance with the foregoing opinion. Taxpayer's tax liability under the Audit is thus reduced by $7,516.90, plus interest. Unless exceptions are filed within 30 days from entry of this order pursuant to Pa. R.A.P. 1571(i), this Order shall become final.