# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Green Acres Contracting      :
Company, Inc.,      :
     :
           Petitioner      :
     :
         v.      : No. 81 F.R. 2013
     : Argued:  June 6, 2016
Commonwealth of Pennsylvania,      :
     :
           Respondent      :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                  **FILED:  August 10, 2016**

This matter is a petition for review filed by Green Acres Contracting Company, Inc. (Taxpayer) appealing a determination of the Board of Finance and Revenue (BFR) that rejected Taxpayer's challenges to an assessment of state use taxes on certain items purchased and used by Taxpayer in its business.  For the reasons set forth below, we affirm in part and reverse in part.

Taxpayer is a Pennsylvania corporation engaged in the business of construction, principally installation of highway guardrail systems and road signs. (McCort Dep. at 7; Ex. 5, Narrative Report of Audit (Audit Report) at 2.) Taxpayer performs this work for the Pennsylvania Department of Transportation (PennDOT) and the West Virginia, Maryland, Ohio, and Virginia state departments of transportation.  (McCort Dep. at 7-8; Audit Report at 2.)  Taxpayer's guardrail

systems are composed of guardrail panels and guardrail posts. (McCort Dep. at 21-25.) Taxpayer uses nuts, bolts and washers to attach 12.5-foot long guardrail panels to each other to obtain the required guardrail length and to attach these guardrails to guardrail posts that are pounded into the ground and hold the guardrails up at the appropriate height. (*Id.* at 21-29.) Taxpayer installs a number of types of guardrail systems that differ in the spacing between the guardrail posts. (*Id.* at 8-9, 25-28, 61.) In some of Taxpayer's guardrail systems, steel, plastic or wood guardrail blocks are installed between the guardrail and each guardrail post to increase the force that the guardrail system can withstand. (*Id.* at 25-26; Audit Report at 9.)

Section 202(a) of the Tax Reform Code of 1971 (Tax Code)[1] imposes a six-percent sales tax on the "sale at retail" of tangible personal property and certain types of services within Pennsylvania, which is collected by the vendor from the purchaser. 72 P.S. § 7202(a); *Crawford Central School District v. Commonwealth*, 888 A.2d 616, 620 (Pa. 2005); *Kinsley Construction, Inc. v. Commonwealth,* 894 A.2d 832, 833 (Pa. Cmwlth. 2006), *aff'd without op.*, 915 A.2d 639 (Pa. 2007). Section 202(b) of the Tax Code imposes a six-percent use tax on the use within Pennsylvania of tangible personal property and certain types of services "purchased at retail," unless the user has paid the sales tax imposed by Section 202(a). 72 P.S. § 7202(b); *Crawford Central School District*, 888 A.2d at 620; *Kinsley Construction, Inc.*, 894 A.2d at 833. The Tax Code defines the "use" that is subject to this tax as including both of the following:

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004. Subsections 201(o)(17) and (pp) and Subsection 204(57) of the Tax Code, discussed herein, were added by the Act of April 23, 1998, P.L. 239, No. 45.

> (1) The exercise of any right or power incidental to the ownership, custody or possession of tangible personal property and shall include, but not be limited to transportation, storage or consumption.
>
> *         *         *
>
> (17) The obtaining by a construction contractor of tangible personal property or services provided to tangible personal property which will be used pursuant to a construction contract whether or not the tangible personal property or services are transferred.

72 P.S. § 7201(o)(1), (17).

In February 2011, following an audit covering the period from January 1, 2007 through March 31, 2010, the Department of Revenue (Department) sent Taxpayer a Notice of Audit Assessment assessing $413,145.24 in delinquent state and local sales and use taxes, plus interest, and also assessing $46,865.24 in penalties. (Ex. 2; Ex. 3.) This assessment consisted of $357.81 in state sales tax, $410,091.43 in state use taxes, and $2,696.00 in Allegheny County use taxes. (Board of Appeals Decision at 1.) The state use taxes assessed by the Department included $129,354.81 for nuts, bolts and washers that Taxpayer used in constructing and installing its guardrail systems, $16,116.27 for guardrail blocks, $6,975.09 for materials used in West Virginia construction projects on which Taxpayer paid use taxes to West Virginia, $4,408.21 with respect to torque wrench service and traffic control invoices, and $2,911.83 for three vehicles purchased by Taxpayer on which the Department contended that Taxpayer paid no sales tax. (McCort Dep. at 19; Ex. 8.) Taxpayer filed a petition for reassessment with the Department's Board of Appeals. The Board of Appeals reduced the total tax assessment to $410,233.41, plus interest, but denied Taxpayer's appeal with respect to the above items and the penalties.

Petitioner appealed the Board of Appeals decision to the BFR. On December 12, 2012, the BFR issued a determination abating the penalties, but

3

rejecting Taxpayer's challenges with respect to the nuts, bolts, washers and guardrail blocks, construction materials used in West Virginia, torque wrench and traffic control invoices, and vehicle purchases. The BFR concluded that Taxpayer was entitled to relief with respect to several other items on which use taxes had been assessed, and reduced the state use tax assessment to $372,922.73 and the Allegheny County use tax assessment to $1,285.12, resulting, with the unchanged state sales tax assessment of $357.81, in a total tax deficiency reassessment of $374,565.66, plus interest. (BFR Determination at 8-10.) Taxpayer timely filed a petition for review appealing the BFR's determination to this Court.[2]

Although appeals from decisions of the Board of Finance and Revenue are under this Court's appellate jurisdiction, the Court functions as a trial court and hears the case *de novo* on the record created in this Court and the facts to which the parties have stipulated. *Southern Pines Trucking v. Commonwealth*, 42 A.3d 1222, 1227 & n.5 (Pa. Cmwlth. 2012), *aff'd without op.*, 69 A.3d 235 (Pa. 2013); *Plum Borough School District v. Commonwealth*, 860 A.2d 1155, 1157 n.3 (Pa. Cmwlth. 2004), *aff'd*, 891 A.2d 726 (Pa. 2006). Taxpayer submitted exhibits and the deposition of its controller as the record before this Court. No stipulation of facts was filed by the parties, but the Commonwealth does not dispute the evidence submitted by Taxpayer.

Taxpayer challenges $159,766.21 of the BFR's $374,565.66 reassessment.[3] Taxpayer argues: 1) that the nuts, bolts, washers and guardrail blocks used in its guardrail construction and installation are "building machinery

---

[2] The Commonwealth did not appeal the abatement of the penalties or the reduction in the assessment.

[3] Taxpayer has paid the Commonwealth the portion of the reassessment that it no longer challenges and the interest thereon. (Ex. 17; McCort Dep. at 59.)

4

and equipment" (BME) exempt from state sales and use taxes under Section 204(57) of the Tax Code, 72 P.S. § 7204(57); 2) that it is entitled to a credit for the use taxes paid to West Virginia under of Section 206(a) of the Tax Code, 72 P.S. §7206(a);[4] 3) that the torque wrench and traffic control invoices are for services that are not subject to sales and use taxes; and 4) that it does not owe use taxes for the three vehicles because it paid the sales tax for those vehicles. We address each of these issues in turn.

*Nuts, Bolts, Washers And Guardrail Blocks*

Nuts, bolts, washers and guardrail blocks are tangible personal property purchased by Taxpayer at retail for use in its construction contracts and are therefore subject to use taxes under Section 202(b) of the Tax Code, unless Taxpayer paid sales taxes on these items. 72 P.S. § 7202(b). Taxpayer did not pay sales taxes on the purchases of nuts, bolts, washers and guardrail blocks at issue here. (Ex. 6.)

The only sales and use tax exemption applicable to construction contractors is the BME exemption provided by Section 204(57) of the Tax Code.

---

[4] Taxpayer argued in its brief that it is also entitled to a credit for taxes paid to the state of Virginia. The record, however, shows that Taxpayer withdrew that claim. (McCort Dep. at 20; Ex. 8 at 7.). In addition, Taxpayer's brief asserts an argument that the West Virginia and Virginia materials are exempt from taxation as resale of traffic signs to a tax exempt purchaser. (Petitioner's Br. at 26-27.) This issue is not raised or encompassed in Taxpayer's Statement of the Questions presented, which raised only credit for taxes paid to other states with respect to those items and makes no reference to traffic signs or resale to exempt entities. (Petitioner's Br. at 3-4.) This argument is therefore waived. Pa. R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"); *Mooney v. Greater New Castle Development Corp.*, 510 A.2d 344, 348 n.4 (Pa. 1986); *Dunn v. Board of Property Assessment, Appeals and Review of Allegheny County*, 877 A.2d 504, 510 n.13 (Pa. Cmwlth. 2005), *aff'd without op.*, 936 A.2d 487 (Pa. 2007).

*Crawford Central School District*, 888 A.2d at 622-23; *Plum Borough School District*, 860 A.2d at 1159-60. Section 204(57) exempts from sales and use taxes

> [t]he sale at retail to or <u>use by a construction contractor of building machinery and equipment and services thereto that are</u>:
> (i) transferred pursuant to a construction contract for any charitable organization, volunteer firemen's organization, volunteer firefighters' relief association, nonprofit educational institution or religious organization for religious purposes, provided that the building machinery and equipment and services thereto are not used in any unrelated trade or business; or
> (ii) <u>transferred to the United States or the Commonwealth or its instrumentalities or political subdivisions</u>.

72 P.S. § 7204(57) (emphasis added). Although Section 204 is titled "Exclusions from tax," because it excuses from taxation items that are otherwise taxable under Section 202, Section 204(57) is a tax exemption, not an exclusion from taxation, and is strictly construed against Taxpayer. *Crawford Central School District*, 888 A.2d at 621; *Plum Borough School District*, 860 A.2d at 1157-58 n.4.

The Commonwealth does not dispute that the nuts, bolts, washers and guardrail blocks at issue here were used by Taxpayer in constructing and installing guardrail systems for PennDOT or other entities to which the BME exemption applies. The question before us is whether these items fall within the definition of BME.

Section 201(pp) of the Tax Code defines BME as "[g]eneration equipment, storage equipment, conditioning equipment, distribution equipment and termination equipment" of ten specified types, including "control system limited to energy management, traffic and parking lot and building access." 72 P.S. § 7201(pp). This definition of BME also specifically provides:

6

> The term shall include boilers, chillers, air cleaners, humidifiers, fans, switchgear, pumps, telephones, speakers, horns, motion detectors, dampers, actuators, grills, registers, traffic signals, sensors, card access devices, guardrails, medial devices, floor troughs and grates and laundry equipment, together with integral coverings and enclosures, whether or not the item constitutes a fixture or is otherwise affixed to the real estate, whether or not damage would be done to the item or its surroundings upon removal or whether or not the item is physically located within a real estate structure. The term "building machinery and equipment" shall not include guardrail posts, pipes, fittings, pipe supports and hangers, valves, underground tanks, wire, conduit, receptacle and junction boxes, insulation, ductwork and coverings thereof.

*Id*. (emphasis added). Nuts, bolts, washers, and guardrail blocks are not themselves within any of the ten types of generation equipment, storage equipment, conditioning equipment, distribution equipment and termination equipment defined as BME, nor are they items specifically listed as BME. Taxpayer argues that all of the nuts, bolts, and washers at issue and guardrail blocks are exempt BME because they are part of its guardrail systems.

The Tax Code, however, does not provide a sales and use tax exemption for entire guardrail systems. Section 201(pp) does not list "guardrail systems" as BME; instead, it provides only that "guardrails" are BME and specifically excludes essential parts of guardrail systems, guardrail posts, from the BME exemption. 72 P.S. § 7201(pp). Given the statute's treatment of "guardrails" as distinct from the complete guardrail system, the fact that items are part of a guardrail system is not sufficient to bring them within the definition of BME. Rather, it appears that the legislature's intent was to exempt only the horizontal rail itself. Guardrail blocks, which are placed between the guardrail and the guardrail post, and the nuts, bolts, and washers connecting the guardrail to guardrail posts are items separate from the guardrail that are used in its installation, and are no

7

more part of the guardrail than they are part of the guardrail posts to which they are also attached. Guardrail blocks and the nuts, bolts, and washers connecting guardrail panels to guardrail posts therefore do not fall within the definition of BME and are not exempt from taxation under Section 204(57) of the Tax Code.[5]

Taxpayer is correct that BME includes the nuts, bolts, and washers that it used to connect one guardrail panel to another in constructing a horizontal guardrail. The Tax Code defines as BME "guardrails," not merely guardrail panels. Nuts, bolts, and washers connecting guardrail panels are part of the horizontal guardrail and are therefore within the BME exemption as an internal part of the exempt guardrail. The exclusion of "fittings" from the definition of BME does not change this. The evident purpose of the exclusion of the listed items, "guardrail posts, pipes, fittings, pipe supports and hangers, valves, underground tanks, wire, conduit, receptacle and junction boxes, insulation, ductwork," is to make clear that those items are not themselves BME, and do not become exempt simply because they are used in installing equipment defined as BME or are used in conjunction with BME. The fact that Section 201(pp) excludes these items does not show a legislative intent to break down the internal components of equipment expressly defined as BME and designate some of those internal components as taxable. The exclusion of "fittings" therefore cannot make

_____

[5] Indeed, it appears that Taxpayer agreed with this analysis at the time of audit at issue here. The Audit Report states that in a conference on this issue, Taxpayer's accountants "did not disagree with the Department's position that the nuts and bolts that attached the guiderail panels to the guardrail posts are taxable" and that Taxpayer's contention with respect to nuts, bolts, and washers was "that the nuts and bolts that attach one length of guiderail panel to another length of guiderail panel simply become part of one continuous length of guiderail and therefore the nuts and bolts are exempt as part of the guiderail." (Audit Report at 9.)

8

nuts, bolts and washers internal to an exempt guardrail taxable, any more than wires or valves inside other exempt BME are separately taxable.[6]

Taxpayer, however, has not shown the amount of the $129,354.81 assessment on nuts, bolts and washers that is attributable to nuts, bolts and washers that are exempt under Section 204(57). Taxpayer has admitted that it cannot quantify the amount or percentage of nuts, bolts and washers it used to connect guardrail panels. (McCort Dep. at 63.) Although Taxpayer has submitted evidence of the number of nuts, bolts and washers used for each attachment of one guardrail panel to another and for each attachment of a guardrail panel to a guardrail post (*id.* at 25-29), this evidence is insufficient to permit the Court to make any determination. Taxpayer provided evidence only as to the spacing of guardrail posts on two of its systems and admitted that it installs other systems with different, unidentified spacing of guardrail posts. (*Id.* at 61.) There is also no evidence as to the average length of the guardrails or even a minimum length, and the ratio between guardrail posts connections and guardrail panel connections will vary with the length of the guardrail, since posts would normally be required on both ends of each guardrail and one less panel connection will be necessary than the number of panels used in a guardrail.

It is Taxpayer's burden to show that an exemption from taxation applies and that the taxes that it challenges were improperly assessed. Section 236

---

[6] Taxpayer also argues that its nuts, bolts and washers are not subject to the exclusion because the term "fittings" applies only to plumbing and pipe connections. We do not base our ruling on this argument. Neither the Tax Code nor the Department's regulations defines the term "fittings" and there is no case law interpreting that term as it used in the Tax Code. The dictionary definitions of the noun "fitting" are not limited to plumbing and pipes and include "accessory, adjunct, attachment" and "a small often standardized part (as a coupling, valve, gauge) entering into the construction of a boiler, steam, water or gas supply installation or other apparatus." *Webster's Third New International Dictionary Unabridged* 860 (2002). In light of our conclusion that the exclusion does not apply to internal components of BME, we need not and do not decide the precise scope of the term "fitting" in Section 201(pp).

9

of the Tax Code, 72 P.S. § 7236; *Senex Explosives, Inc. v. Commonwealth*, 58 A.3d 131, 137, 139 (Pa. Cmwlth. 2012), *aff'd without op.,* 91 A.3d 101 (Pa. 2014); *Southern Pines Trucking*, 42 A.3d at 1229; *Fiore v. Commonwealth*, 668 A.2d 1210, 1215 (Pa. Cmwlth. 1995), *aff'd without op.,* 690 A.2d 234 (Pa. 1997). Because Taxpayer has not introduced evidence sufficient to make any determination of the amount of nuts, bolts and washers that are exempt or of the amount of the assessment on those items that is incorrect, we are constrained to affirm the $129,354.81 assessment of use taxes on nuts, bolts and washers, in addition to the assessment of use taxes on the non-exempt guardrail blocks.

*Taxes Paid To West Virginia*

> Section 206(a) of the Tax Code provides:
>
> A credit against the tax imposed by section 202 shall be granted with respect to tangible personal property or services purchased for use outside the Commonwealth equal to the tax paid to another state by reason of the imposition by such other state of a tax similar to the tax imposed by this article: Provided, however, That no such credit shall be granted unless such other state grants substantially similar tax relief by reason of the payment of tax under this article or under the Tax Act of 1963 for Education.

72 P.S. § 7206(a) (emphasis added). West Virginia grants a credit against sales and use taxes imposed by other states. W. Va. Code § 11-15A-10a.

Taxpayer paid $6,975.09 in use taxes to West Virginia for construction materials that it purchased under West Virginia specifications for use on West Virginia projects. (McCort Dep. at 29-42; Ex. 8 at 7; Ex. 15; Ex. 16.) One of the 16 transactions that are the subject of this claim was for plants for landscaping purchased by Taxpayer in Pennsylvania from a Pennsylvania seller for use on a West Virginia project. (McCort Dep. at 72-73; Ex. 16 at 2.) The other 15

10

transactions were purchases from Ohio sellers and a West Virginia seller. (Ex. 16 at 3-17.) Fourteen of those invoices indicate that the materials were delivered to Taxpayer in Pennsylvania before their use in West Virginia; the remaining invoice on which Taxpayer paid taxes to West Virginia indicates that the items, purchased from an Ohio seller, were to be delivered directly to West Virginia. (McCort Dep. at 74-79; Ex. 16 at 3-17.)

The Commonwealth does not dispute that Taxpayer paid $6,975.09 in use taxes to West Virginia on these transactions and that materials were all purchased for West Virginia highway projects and used in West Virginia. The Commonwealth also has not contested that the West Virginia statute satisfies the reciprocity requirement of Section 206(a) and that it assessed Pennsylvania use tax on those same materials without a credit for those tax payments. These undisputed facts satisfy all of the requirements that Section 206(a) sets forth for a credit for taxes paid to another state.

The Commonwealth contends that Taxpayer is not entitled to any credit for the taxes it paid to West Virginia because the credit under Section 206(a) is limited to purchases made and delivered outside of Pennsylvania. We do not agree. The language of Section 206(a) does not state that the property must be purchased and delivered outside of Pennsylvania; it provides a credit for taxes paid to other states on "tangible personal property or services <u>purchased for use outside the Commonwealth</u>," without restriction on where the property is purchased or first delivered. 72 P.S. § 7206(a) (emphasis added). It is a fundamental principle of statutory construction that each word in the statute is to be given meaning and not be treated as mere surplusage. *In re Employees of Student Services, Inc.*, 432 A.2d 189, 195 (Pa. 1981); *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Ketterer)*, 87 A.3d 942, 947-48 (Pa. Cmwlth. 2014); *see also* 1 Pa. C.S. §

11

1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions"). If it were the legislature's intent to limit the credit to purchases completed outside Pennsylvania, the words "for use" would be superfluous.

The Commonwealth argues that the Tax Code imposes the use tax on storage of tangible personal property regardless of where it is ultimately used, 72 P.S. § 7201(o)(1); *see also* 61 Pa. Code § 32.5(f), and repealed a prior provision that excluded interim storage from taxable use. This fact does not support the limiting of Section 206(a) to purchases and deliveries outside of Pennsylvania. The issue here is not whether the materials at issue are subject to the use tax under Section 202(b) of the Tax Code, but whether Section 206(a) gives Taxpayer a credit against that tax for taxes that it paid to another state on those same materials. The fact that the legislature has chosen to tax items stored in Pennsylvania and collect that tax where no tax is paid to any other state does not negate a legislative intent to grant a credit where taxes have been paid to another state whose connection to the property is greater because the items were purchased solely for installation or consumption in that other state.

The Department regulation interpreting the statutory credit for taxes paid other states, 61 Pa. Code § 31.15, does require that the taxpayer show out-of-state purchase and delivery. This regulation provides:

> A contractor may be entitled to a tax credit against tax owed to the Commonwealth upon property used or consumed in this state. To be entitled to such credit, the following conditions shall be met:
> (1) Purchase and possession of the property shall be made in a state other than this Commonwealth; and
> (2) Sales tax shall have been legally paid upon the property to the other state; and

12

(3) The sales tax law of the other state must grant substantially the same tax credit for sales tax paid to the Commonwealth. …

61 Pa. Code § 31.15(a) (emphasis added). If this regulation were consistent with the language of Section 206(a), Taxpayer would not be entitled to a credit on the 15 purchases that were initially made in or delivered to Pennsylvania.[7] This regulation, however, does not interpret the statutory language "purchased for use outside the Commonwealth." Instead, Section (a)(1) of the regulation imposes a completely different criterion, the location of purchase and delivery, that is not contained in Section 206(a). While an agency's interpretive regulation is entitled to deference to the extent that it tracks the meaning of the statute in question, such a regulation cannot impose standards different from those set forth by the statute's language. *Commonwealth v. Gilmour Manufacturing Co.*, 822 A.2d 676, 679-84 (Pa. 2003) (Department regulation defining state where sale occurred was disregarded in interpreting Section 401 of the Tax Code because it was inconsistent with the language of Section 401); *Public School Employees' Retirement System v. Pennsylvania School Boards Association, Inc.*, 682 A.2d 291, 292-94 (Pa. 1996) (regulation imposing different standard for calculating pension service credit than that set by statute was invalid). Because 61 Pa. Code § 31.15(a)(1) is contrary to the clear wording of Section 206(a) of the Tax Code, this subsection of the Department's regulation is invalid and must be disregarded.

The Commonwealth also argues, based on case law from other jurisdictions, that statutes providing credits for taxes paid to other states are interpreted to give priority to the state where the first delivery or use occurs and to

---

[7] Although the Commonwealth characterizes all of the 16 transactions as involving a purchase or delivery in Pennsylvania, that is not correct with respect to one of the purchases at issue, which was delivered from Ohio directly to West Virginia and was not received by Taxpayer in Pennsylvania. (McCort Dep. at 78; Ex. 16 at 16.)

13

require that the credit be given by the state where the item was subsequently used or moved. The statutory provisions in those cases were significantly different from Section 206(a) and did not contain the language at issue here, "purchased for use outside the [state]." *See Chicago Bridge & Iron Co. v. State Tax Commission*, 839 P.2d 303, 308-09 (Utah 1992) (credit was under Multistate Tax Compact that provided that "[e]ach purchaser liable for a use tax on tangible personal property shall be entitled to full credit for the combined amount or amounts of legally imposed sales or use taxes paid by him with respect to the same property to another State and any subdivision thereof" and Multistate Tax Commission required that "precedence in liability shall prevail over precedence in payment"); *Broadcast International, Inc. v. Utah State Tax Commission*, 882 P.2d 691, 699 (Utah App. 1994) (same); *Allied Steel Co. v. Larey*, 440 S.W.2d 567, 568-69 (Ark. 1969) (statute provided that tax was not imposed "in respect to the use or consumption or storage of tangible personal property … for use or consumption in this State upon which a like tax equal to or greater than the amount imposed by this Act has been paid in another state"). Because those statutes give a general credit for taxes legally imposed or paid to other states without further prerequisites for the credit, a rule of priority is necessary to determine which state is to give credit and which state is to retain the collected tax. In contrast, Section 206(a) defines the credit by the state of intended use, which requires no rule of priority to determine which state's tax takes precedence.

Because Taxpayer showed that it paid use taxes of $6,975.09 to West Virginia for materials purchased for and used in West Virginia construction projects, Taxpayer is entitled to a credit under Section 206(a) of the Tax Code against the assessment of Pennsylvania use taxes on those same materials and the BFR's reassessment must accordingly be reduced by $6,975.09.

14

*Torque Wrench And Traffic Control Invoices*

Taxpayer contends neither the torque wrench nor traffic control invoices fall within the types of transactions on which the Tax Code imposes the use tax. We do not agree.

As noted above, Section 202(b) imposes the use tax on "use … within this Commonwealth of tangible personal property purchased at retail … and on those services described herein purchased at retail." 72 P.S. § 7202(b). Section 201(k)(4) defines "[s]ale at retail" as including

> <u>rendition for a consideration of the service of repairing, altering,</u> mending, pressing, fitting, dyeing, laundering, drycleaning or cleaning <u>tangible personal property other than wearing apparel or shoes</u>, or applying or installing tangible personal property as a repair or replacement part of other tangible personal property except wearing apparel or shoes for a consideration, …. <u>whether or not any tangible personal property is transferred in conjunction therewith</u>, except such services as are rendered in the construction, reconstruction, remodeling, repair or maintenance of real estate[.]

72 P.S. § 7201(k)(4) (emphasis added). Section 201(f) defines "[p]urchase at retail" as including "[t]he obtaining for a consideration of those services described in subclauses (2), (3) and (4) of clause (k) of this section other than for resale." 72 P.S. § 7201(f)(3). "Purchase at retail" is also defined as including "the rental or lease of tangible personal property." 72 P.S. § 7201(f)(2).

All of the torque wrench invoices at issue state that they are for calibration of torque wrenches or other equipment; five of these eight invoices refer to repair of the torque wrenches in addition to calibration. (Ex. 9.) Torque wrench repair is a repairing of tangible personal property, and therefore constitutes a service that is subject to the use tax. 72 P.S. § 7201(f)(3), (k)(4). Calibration would constitute an altering of the torque wrench or other equipment if the service

15

provided included adjustments to the wrenches or other equipment. While Taxpayer claimed that the calibration was a "testing" of the torque wrenches, it also characterized the calibration as "[m]aking sure that [the wrench] is tightened to the proper tension" (McCort Dep. at 42-44), which would include adjustments of the wrench where necessary. Because Taxpayer did not show that the work encompassed by the "calibration" services was outside the scope of taxable services under Sections 201(f)(3) and 201(k)(4) of the Tax Code, Taxpayer failed to meet its burden of showing that the taxes on the torque wrench invoices were improperly assessed. *See* 72 P.S. § 7236; *Senex Explosives, Inc.*, 58 A.3d at 137; *Southern Pines Trucking*, 42 A.3d at 1229; *Fiore*, 668 A.2d at 1215.

The traffic control invoices on their face state that they are charges for rental of temporarily placed, movable equipment that is used at Taxpayer's construction sites. (Ex. 10.) Because rentals of tangible personal property are subject to the use tax, 72 P.S. § 7201(f)(2), there is no error in the assessment of use taxes on the traffic control invoices.

*Vehicles On Which Sales Tax Was Paid*

Taxpayer was assessed use tax on three vehicles, $1,320.00 and $1095.00 for two Freightliner trucks and $496.83 for an F-450 truck, on the ground that Taxpayer allegedly did not pay sales tax on the purchase of those vehicles. (Ex. 7.) Taxpayer in fact paid $1,320.00 and $1095.00 in Pennsylvania sales tax on the two Freightliner trucks in 2007 and 2008, respectively. (Ex. 12; Ex. 13; McCort Dep. at 48-53.) The Commonwealth concedes that the assessments for these two vehicles, which total $2,415.00, are in error, and that the BFR's reassessment must be reduced by that amount. (Respondent's Br. at 7-8.) With respect to the F-450 truck, the assessment was based on the fact that Taxpayer's

16

capitalized cost of the truck, $44,432.80, was more than the invoice for the truck on which sales tax was paid. (Ex. 7; Ex. 14.) Taxpayer has submitted documents showing the basis for the $44,432.80 capitalized cost and supporting invoices for work on and equipment added to this truck that show payment of the sales tax on those items. (Ex. 14; McCort Dep. at 56-59.)

As noted above, Section 202(b) imposes the use tax only on items on which the user did not pay the sales tax imposed by Section 202(a). 72 P.S. § 2202(b) ("such tax shall not be paid to the Commonwealth by such person where he has paid the tax imposed by subsection (a) of this section"). Because Taxpayer has shown that it paid the sales tax for all three vehicles, it does not owe any use tax with respect to these vehicles and the BFR's reassessment must accordingly be reduced by $2,911.83.

*Conclusion*

For the foregoing reasons, the order of the BFR is affirmed as to the use tax assessment on nuts, bolts and washers used in guardrail systems, guardrail blocks, and the torque wrench and traffic control invoices. The order of the BFR, however, is reversed as to the use tax assessments on the items on which Taxpayer paid taxes to West Virginia and the three vehicles purchased by Taxpayer. The BFR's assessment of $372,922.73 in state use taxes must accordingly be reduced by $9,886.92, to $363,035.81.

_____
**JAMES GARDNER COLINS, Senior Judge**

Judge McCullough did not participate in this decision.

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Green Acres Contracting          :
Company, Inc.,          :
         :
         Petitioner          :
         :
         v.          : No. 81 F.R. 2013
         :
Commonwealth of Pennsylvania,          :
         :
         Respondent          :

# O R D E R

AND NOW, this 10th day of August, 2016, the order of the Board of Finance and Revenue in the above-captioned matter is hereby AFFIRMED insofar as it upheld the assessment of $145,471.08 in use taxes on nuts, bolts, washers, and guard rail blocks and the assessment of $4,408.21 in use taxes on torque wrench and traffic control invoices. The order of the Board of Finance and Revenue is REVERSED with respect to the assessment of $6,975.09 in use taxes on materials that Petitioner purchased for use in West Virginia and the assessment of $2,911.83 in use taxes on vehicle purchases. Unless exceptions are filed within thirty (30) days in accordance with the provisions of Pa. R.A.P. 1571(i), this matter is remanded to the Board of Finance and Revenue to reduce the assessment of state use taxes issued to Petitioner for the January 1, 2007 through March 31, 2010 audit period to $363,035.81 in accordance with the foregoing opinion.

_____
**JAMES GARDNER COLINS, Senior Judge**