**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| STEVEN MADER, | : | No. 33 WAP 2019 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered November |
| | : | 30, 2018 at No. 609 WDA 2018, |
| v. | : | affirming in part and reversing in part |
| | : | the Order of the Court of Common |
| | : | Pleas of Allegheny County entered |
| DUQUESNE LIGHT COMPANY, | : | April 17, 2018 at No. GD 13-6249 |
| | : | and remanding. |
| Appellee | : | |
| | : | SUBMITTED:  April 21, 2020 |

## OPINION

**JUSTICE TODD**                         **DECIDED:  NOVEMBER 18, 2020**

In this appeal by allowance, we consider the limits on a trial court's discretion to order a new trial on *all* damages where a jury's award on certain damages was based on stipulations or was otherwise unimpeachable.  As we agree with the Superior Court that the trial court herein abused its discretion, we affirm.

Appellant Steven Mader was a self-employed masonry contractor.  In September 2012, Mader was working on a project involving repairs to a chimney, fireplace, and front stoop of a home in the North Hills of Pittsburgh, Pennsylvania.  On September 21, 2012, after Mader completed the project and his crew was cleaning the premises, his customer asked if he would check the gutters of the home to see if any mortar from the chimney repair had washed into the gutters during a recent rainstorm.  Mader, after checking the gutters, was returning to his truck with the ladder.  Underground electrical service was

provided to every home in the neighborhood, but Mader had not noticed that there was an electrical power line only 11 feet from the customer's home. The top of the ladder made contact with the power line and 13,000 volts of electricity ran down the ladder and through Mader's body. Mader immediately lost consciousness and fell to the ground. He suffered severe burns to both arms where he had been holding the ladder and both feet where the electricity exited his body. Mader was taken to a hospital where he was given his last rites from a priest, but ultimately survived.

The next day, Mader underwent surgery on his feet and right arm. Both of his feet were burned from the toes to the mid-forefoot, with the burn penetrating to the bone. Dead and dying tissue was removed, and cadaver grafts were attached to Mader's feet. Tissue was excised from Mader's right arm that was also burned to the bone. To relieve swelling in this arm, medical professionals opened the subcutaneous layers of skin (a procedure known as a fasciotomy) and performed a cadaver graft. During a second surgery while still at the hospital, the fasciotomy on Mader's right arm was closed, and tissue was excised from his left hand and wrist. Subsequently, on October 1, 2012, both of his feet were amputated at the middle arch, known as a transmetatarsal amputation. On October 3, 2012, Mader returned to the hospital for irrigation of the amputation wounds, and, one week later, he had an additional surgery to excise tissue and place a wound vac on his right forearm. Finally, on October 25, 2012, Mader had his last surgery, during which tissue was debrided around his elbow and he received an autograft, which consisted of the removal of healthy tissue from Mader's upper thighs that was used to replace the skin he had lost. For the next six weeks, Mader stayed in a skilled nursing facility.

Mader's masonry business completed outstanding projects while he was hospitalized. His two employees came to the nursing facility daily to receive assignments.

Due to the change in season, at the same time Mader moved to the skilled nursing facility, his business converted solely to chimney cleaning. When he left the skilled nursing facility, Mader was confined to a wheelchair; however, he later was able to walk with his gait altered to accommodate the amputation of the balls of his feet. Nevertheless, within two years, Mader closed his business, as he could no longer participate in the physical demands of bricklaying and the market would not bear his prices without him doing the work.

In April 2013, Mader sued Appellee Duquesne Light Company ("Duquesne Light"), the owner of the power line the ladder came into contact with, in the Allegheny County Court of Common Pleas. Mader alleged that Duquesne Light's negligence in maintaining the electric lines too close to the ground caused his injuries and that Duquesne Light acted with reckless indifference to his safety; he also sought punitive damages. At the conclusion of a trial by jury, Duquesne Light was found to be 60% negligent and Mader was found to be 40% negligent for his injuries.

Importantly, for purposes of this appeal, the jury awarded Mader $500,000 in compensatory damages, which was molded to $300,000 to account for his 40% negligence. At Mader's request, the trial court instructed the jury that he was entitled to compensation for past medical expenses, which were stipulated to by the parties; future medical expenses; and past and future lost earnings. The jury was also instructed on, and given an itemized verdict slip for, damages for past and future pain and suffering; embarrassment and humiliation; loss of ability to enjoy the pleasures of life, and disfigurement.[1]

---

[1] For ease of discussion, we refer to these damages collectively as "pain and suffering" or "noneconomic damages". On the verdict slip, however, disfigurement was listed separately.

The jury awarded $444,525.56 for past medical expenses and $55,474.44 for future medical expenses. The jury awarded $0 for past or future lost earnings, and $0 in noneconomic damages.

Mader filed a motion for post-trial relief requesting a new trial on the issue of damages. Duquesne Light acknowledged that Mader was entitled to a new trial on damages for pain and suffering until the date his wounds healed, and disfigurement. It denied, however, that Mader was entitled to a new trial on future noneconomic damages or either past or future lost earnings. Nevertheless, the trial court granted Mader's request for a new trial on all damages.[2]

Specifically, with respect to the stipulated past medical expenses, the trial court determined that Mader was likely to incur additional medical expenses during the pendency of the new trial, and thus, his past medical expenses would likely be greater than the stipulated $444,525.56 awarded by the jury. Additionally, the trial court opined that having a new trial on past medical expenses would avoid the confusion that would likely result from a new jury hearing evidence of pain and suffering as a result of Mader's medical procedures, but not being given the opportunity to award past medical expenses for these procedures.

Regarding future medical expenses, Mader's expert had testified that Mader would incur future medical expenses in the amount of approximately $2,100,000, whereas Duquesne Light's experts projected that Mader would incur medical expenses in the range of $42,636.65 to $50,483.67. As noted, the jury awarded future medical expenses in the amount of $55,474.44. The trial court opined that, even though the jury award was

_____

[2] Two aspects of this decision are not at issue in this appeal. First, the trial court awarded Mader a new trial on past and future lost earnings, as the evidence in that regard was uncontradicted. Likewise, the trial court ordered a new trial on noneconomic damages, as the jury's award of $0 damages was against the weight of the evidence where undisputed medical evidence revealed significant pain and suffering.

closer to Duquesne Light's projected future medical expenses, it was impossible to know how the jury arrived at $55,474.44. The trial court surmised that it was most likely that the jury arrived at that amount because, when it is added to the stipulated past medical expenses, the total was a round amount — $500,000. The trial court rejected Duquesne Light's argument that a jury that irrationally determined that Mader was not entitled to any compensation for his excruciating pain or disfiguring amputations and burns could nonetheless rationally calculate future medical expenses. Additionally, the court reasoned that, similar to its grant of a new trial for past medical expenses, experts at the new trial would have to project revised future medical expenses, as medical expenses incurred during the pendency of the new trial could no longer be classified as *future* medical expenses.

Thereafter, Duquesne Light appealed to the Superior Court. In a unanimous published decision, the court affirmed in part, reversed in part, and remanded. *Mader v. Duquesne Light Co.*, 199 A.3d 1258 (Pa. Super. 2018).[3] Specifically, regarding the trial court's grant of a new trial for past medical expenses, the Superior Court reversed. The court found that the parties stipulated to $444,525.56 as the amount of Mader's past medical expenses and that the trial court expressly instructed the jury that it was to award that amount to Mader if it found Duquesne Light had caused Mader's harm. The Superior Court stressed that stipulations are binding on the court as well as the parties, and noted that juries are presumed to follow a court's instructions. That being the case, the court concluded that the jury's award of the amount stipulated to by the parties did not shock one's sense of justice. The Superior Court also rejected the trial court's reasoning that Mader was likely to incur additional medical expenses during the pendency of a new trial.

---

[3] The Superior Court panel was comprised of Judges Jacqueline O. Shogun and Mary P. Murray, and President Judge Emeritus John T. Bender.

The court concluded that the parties stipulated to the $444,525.56 in medical expenses from the time of injury until trial, and, while Mader would incur additional medical expense during the pendency of a new trial, the trial court's view disregarded the jury's award of $55,474.44 in future medical expenses. Thus, in the Superior Court's view, Mader had already been compensated for his future medical expenses, including those incurred during the pendency of a new trial.

As to damages for future medical expenses, the Superior Court reasoned that, because the award of $55,474.44 for future medical expenses was significantly closer to the projections of Duquesne Light's experts, it was apparent that the jury resolved the conflicting testimony in this regard in favor of Duquesne Light's witnesses, and that the record supported the jury's determination. Related thereto, the court found that the evidence established that, despite his injuries, Mader was able to travel and lead an active lifestyle, that the likelihood that Mader would have to undergo multiple knee and hip replacements, as his experts offered, was no greater than anyone else who, like Mader, had a pre-existing arthritic condition, and that, even if he needed surgery, it would not necessitate repeated knee and hip replacements. As the jury also heard testimony that Mader would not need the assistance of a personal assistant or a new home, which Mader's witnesses testified would be necessary, the Superior Court reasoned that the jury found Duquesne Light's experts to be more credible and that the evidence supported the jury's determination. The Superior Court also rejected the trial court's conclusion that a jury that "irrationally" failed to award Mader noneconomic damages could not "rationally calculate" a proper award of future medical expenses as erroneous and unsupported by

legal authority. That being the case, the court found the trial court abused its discretion in awarding a new trial on future medical expenses.[4]

Thus, the Superior Court affirmed in part and reversed in part the trial court's award of a new trial. Mader sought allowance of appeal in our Court.

We granted allocatur, limited to two inter-related issues:

> (1) Whether it is within the trial court's discretion to grant a new trial on all damages when the jury's verdict as to significant portions of the damages verdict is so irrational that it shocks one's sense of justice.
>
> (2) Whether the panel misapplied the abuse of discretion standard and created new law by requiring a piecemeal evaluation of a clearly improper damages verdict.

*Mader v. Duquesne Light Company*, 217 A.3d 193 (Pa. 2019) (order).

We first address the appropriate standard and scope of review in considering these issues. It is a fundamental precept that a decision to order a new trial lies within the discretion of the trial court. Thus, it is well settled that the proper standard of appellate review is determining whether the trial court abused its discretion. *Morrison v. Commonwealth, Department of Public Welfare*, 646 A.2d 565, 570 (Pa. 1994); *Coker v. S.M. Flickinger Co., Inc.*, 625 A.2d 1181, 1184 (Pa. 1993). In *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1121-22 (Pa. 2000), our Court explained the process of reviewing a motion to grant or deny a new trial. First, the underlying matter that formed the basis for the trial court's decision is to be reviewed — that is, whether a mistake occurred and whether that mistake was sufficient to order a new trial. If the appellate court agrees with

---

[4] Additionally, although not at issue in this appeal, the Superior Court upheld the trial court's determination that the record did not support the jury's failure to award Mader damages for past and future lost earning capacity. Furthermore, the Superior Court concluded that the trial court did not abuse its discretion in awarding Mader a new trial on noneconomic damages.

the trial court that an error occurred, it proceeds to determine whether the trial court abused its discretion in ruling on the request for a new trial. *Id.* at 1122; *Morrison*, 646 A.2d at 571; *Coker*, 625 A.2d at 1184 ("Discretion must be exercised on the foundation of reason."). An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. *Id.* at 1184-85. Merely because an appellate court would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. *Morrison*, 646 A.2d at 571. Also, "[w]here the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion." *Id.* (quoting *Coker*, 625 A.2d at 1187).

As to our scope of review, if the trial court cites to specific reasons for its decision on a request for a new trial, and it is clear that the decision of the trial court is based exclusively on those reasons, the appellate court may reverse the trial court's decision only if it finds no basis on the record to support any of those reasons. *Coker*, 625 A.2d at 1188. Alternatively, where the trial court leaves open the possibility that there were reasons to grant or deny a new trial other than those it expressly offered, or the trial court justifies its decision on the "interests of justice," an appellate court must apply a broad scope of review and affirm if it can glean any valid reason from the record. *Morrison*, 646 A.2d at 570.

Turning to the arguments of the parties, Mader initially offers that, in Pennsylvania, trial courts have broad discretion to grant a new trial when the verdict is against the weight of the evidence, and, as claimed here, so contrary to the evidence as to shock one's sense of justice. He continues that, while a jury is not required to accept claims of pain and suffering, it may not disregard an obvious injury or uncontroverted medical evidence, or disregard that human experience supports the existence of pain. Likewise, Mader

stresses that a jury may not withhold lost wages when the evidence, without contradiction, establishes that lost wages were the result of negligence. Mader asserts that it is within the trial court's discretion to grant a new trial "on all damages where a substantial portion of the damages verdict is against the weight of the evidence because when substantial portions of the verdict are against the weight of the evidence the entire damages verdict is against the weight of the evidence." Appellant's Brief at 38.

Applying these principles, Mader offers that both lower tribunals found that the jury disregarded the evidence as to past, present, and future noneconomic damages, past wage loss, and future loss earning capacity, and, therefore, "almost the entire damages verdict was against the weight of the evidence and shocked the consciousness (sic) of the court." Appellant's Brief at 39. Related thereto, Mader points to the trial court's rationale for a new trial as to all damages, that "the jury's irrational verdict of zero for pain and suffering and wage loss in the face of the record and proper jury instructions cast doubt on the propriety of the damages awards the jury adjudicated for medical expenses." Appellant's Brief at 39-40. Even more specifically, Mader claims that his medical treatment would necessarily be at issue at a new damages trial and it would be confusing to the jury if they were not given the opportunity to decide past and future medical expenses at the new trial.

In support of his position that the award of a new trial on all damages was proper, Mader offers a number of decisions by the Superior Court which he maintains are analogous to this appeal, and in which a new trial was awarded on all damages, even where, as here, the jury's verdict on certain damage categories was arguably supported by the evidence. *See Womack v. Crowley*, 877 A.2d 1279 (Pa. Super. 2005); *Marsh v. Hanley*, 856 A.2d 128 (Pa. Super. 2004); *Zeigler v. Detweiler*, 835 A.2d 764 (Pa. Super. 2003); *Monschein v. Phifer*, 771 A.2d 18 (Pa. Super. 2001); *Fischer v. Troiano*, 768 A.2d

1126 (Pa. Super. 2001); *Burnhauser v. Bumberger*, 745 A.2d 1256 (Pa. Super. 2000); *Hobbs v. Ryce*, 769 A.2d 469 (Pa. Super. 2000). Mader asserts that, on appeal, the Superior Court improperly placed the burden on him when it stated that he failed to offer authority for the proposition that a new trial on some damages mandates a new trial on all damages. According to Mader, the question was not whether a new trial on all damages was mandated, but, rather, whether the trial court's award of a new trial was an abuse of discretion, which, he contends, was Duquesne Light's burden to demonstrate. Mader submits that, based upon the findings of the lower tribunals that the jury's $0 award for past and future lost wages and noneconomic damages was against the weight of the evidence, the trial court was within its discretion to award a new trial on all damages.

Related thereto, Mader contends that the trial court is in the best position to grant or deny a new trial, and, thus, appellate review should focus on whether the trial court abused its discretion and invaded the domain of the jury, rather than whether there is support in the record for the jury's verdict, citing *Thompson v. Philadelphia*, 493 A.2d 669 (Pa. 1985). Mader stresses that, here, the Superior Court misapplied the abuse of discretion standard by reviewing the record to find support for the jury's verdict, rather than assessing whether the record supported the trial court's exercise of discretion to grant a new trial. After detailing the record with respect to the severity of his injuries, the medical treatments he received, the future medical and earnings consequences of his injuries, as well as his disfigurement and loss of life's pleasures, Mader maintains that the total damages award of $500,000 is almost $200,000 less than the amount of economic damages to which Duquesne Light's expert admitted. Thus, Mader submits that it was not a mistake for the trial court to presume that a jury that irrationally determined that he was not entitled to any compensation for pain or suffering did not rationally calculate future medical expenses. Mader claims that the Superior Court, rather than considering whether

the trial court's decision was supported by the record, improperly reweighed the evidence and substituted its own judgment for the trial court with respect to damages for past and future medical expenses. Moreover, Mader argues that, while a court may limit a new trial to damages only and not liability, here, the Superior Court erroneously extended this principle by limiting the new trial to only specified damages categories. Mader urges that the Superior Court's approach is unworkable, and its decision excluding past and future medical expenses from retrial was inconsistent with its appellate role, as well as prior case law, and, thus, should be reversed.

Duquesne Light counters by first emphasizing various aspects of the record which it submits establishes that there was conflicting evidence regarding Mader's injuries and future medical needs. [5] This record evidence includes, *inter alia*, that Mader's wounds healed within months of the accident; that he was ambulatory without the need for assistance within four or five months of the accident; that he receives no treatment for his injuries other than periodic follow-up visits; that Mader's cognitive issues were pre-existing, including dyslexia and attention deficit disorder; and that Mader's residual physical issues, such as arthritis and hip and knee issues, were due to pre-existing

---

[5] Duquesne Light argues that Mader waived his right to seek a new trial for past and future medical expenses, offering that, while Mader requested a new trial on damages, and raised arguments about lost wages and pain and suffering, he failed to set forth any reasoning or argument as to why the jury's award regarding past and future medical expenses was improper, citing Pa.R.C.P. 227.1 (requiring in a post-trial motion separate reasons for each type of relief sought). Mader responds that the waiver issue is not encompassed within the issues upon which we granted allowance of appeal, was properly resolved by both the trial court and the Superior Court's below against Duquesne Light, and, in any event, he preserved his right to a new trial on past and future medical expenses by seeking a new trial limited to damages, and in his reply brief in the trial court arguing for a new trial on all damages. We too decline to find waiver in these circumstances. While, in his post-trial motion, Mader focused on the lack of damages for pain and suffering, he argued globally for a new trial on all damages, and, at least in certain post-trial filings, sought from the trial court an award of a new trial for all damages, and argued against the award of a new trial on only certain categories of damages.

conditions and/or his failure to comply with his physician's treatment prescriptions, such as the use of orthotic devices. Duquesne Light also emphasizes that there was conflicting evidence regarding future medical expenses, offering that Mader's witness explained future medical care would cost approximately $2,100,000 — including a new home, part-time personal care until he reached the age of 65, and full-time care thereafter — but that Duquesne Light's witness set the future medical expenses at approximately $50,000 for preventative care appointments and orthotics. Furthermore, Duquesne Light points out that the jury heard testimony that Mader travelled to Europe only 10 months after his accident, and has since traveled to Florida and California in the United States, as well as to countries such as Spain, Germany, and Turks and Caicos, and that he is physically active. Finally, Duquesne Light highlights the existence of various credibility issues, such as Mader denying being able to work at any job in any capacity, but nonetheless working out at the gym multiple times a week, and his request for future knee and hip replacements, a new home, and personal care aides, while his own life care planner admitted there was no evidence indicating that Mader would need such surgeries, or what services an aide would provide, given Mader was self-sufficient and did not currently use an aide.

Duquesne Light argues that the core question at issue in this appeal is whether the trial court had discretion to order a new trial on past and future medical expenses because the jury's determination on noneconomic damages and lost earnings was defective. According to Duquesne Light, a trial court should not have the discretion to expand the award of a new trial on damages to re-litigate issues properly resolved by the original jury — i.e., to "throw out the baby with the bath water." Appellee's Brief at 24. Specifically, Duquesne Light offers that a trial court's discretion to order a new trial has its limits. In Duquesne Light's view, a trial court is permitted to overturn a damages award

and order a new trial only in extraordinary circumstances. Duquesne Light stresses that it is within the sole province of the jury to assess testimony and to accept or reject estimates given by experts. It points out that the jury was properly instructed by the trial judge, who explained that jurors were to decide whether a witness was believable, that the jury could believe all or part or none of a witness's testimony, and that the burden was on Mader to prove the extent of damages caused by Duquesne Light. Emphasizing the narrow circumstances in which a jury's award may be overturned, Duquesne Light submits that a trial court cannot overturn a jury's award of damages if it is supported by the evidence and bears a reasonable resemblance to the proven damages, and that an award may not be rejected simply because the court believes the jury's determination was improper.

Applying these principles, Duquesne Light maintains that the trial court erred when it found that a jury that irrationally determined that Mader was not entitled to any compensation for pain and suffering could not rationally calculate future medical expenses. According to Duquesne Light, since there was no error in the amounts awarded for past and future medical expenses, the trial court could not order a new trial on those issues simply because it believed the jury's error on pain and suffering undermined its award for medical expenses. Thus, Duquesne Light urges that, by definition, a jury award supported by the evidence cannot be shocking, unfair, corrupt, or offensive to the court's conscience and judgment.

Related thereto, Duquesne Light contends that the various forms of damages at issue here – medical expenses (past and future), noneconomic (past and future), and lost wages (past and future) – represented distinct and discrete forms of compensatory damages, addressed different harms, and required different supporting evidence; in addition, these damages were itemized separately on the verdict slip, and were the

subject of their own jury instructions. This being the case, Duquesne Light asserts that a new trial on damages should be limited to the discrete types of damages affected by error, citing *McNeil v. Owens-Corning Fiberglass Corp.*, 680 A.2d 1145, 1148 (Pa. 1996). Duquesne Light offers that, contrary to the case law cited by Mader for the proposition that a trial court is required to award a new trial on all damages, Pennsylvania courts have limited new trials to discrete damages. *See*, *e.g.*, *Hyang v. Lynde*, 820 A.2d 753 (Pa. Super. 2003) (limiting new trial to minor injuries, which were only a portion of jury award not supported by record evidence); *Campanga v. Rogan*, 829 A.2d 322 (Pa. Super. 2003) (limited new trial to certain types of damages so plaintiff would not get a "second bite at the apple"); *Prince v. Adams*, 324 A.2d 358 (Pa. Super. 1974) (permitting only new trial on survivorship claim and not wrongful death claim as the latter bore a reasonable relationship to the damages actually proven, and, thus, should not be relitigated); *Carson v. Smith*, 146 A.2d 634 (Pa. 1958) (finding new trial limited to damages for pain and suffering when jury awarded full amount for past medical expenses). Duquesne Light also cites to a number of decisions from other jurisdictions that have limited the scope of a new trial to certain damages. *See*, *e.g.*, *Richards v. Fairfield*, 127 A.D.3d 1290 (N.Y. App. Div. 2015); *Aguilera v. Equity One, LLC*, 61 So.3d 113 (Fla. Dist. Ct. App. 2011); *Drehmer v. Fylak*, 837 N.E.2d 802 (Ohio Ct. App. 2005).

Additionally, Duquesne Light refutes certain of Mader's arguments in favor of reversal. First, Duquesne Light challenges Mader's argument that jury errors on some issues demonstrate that its award on past and future medical expenses cannot be trusted, pointing to the above-cited case law, as well as the fact that the past medical expenses were stipulated and court-instructed, and the future medical expenses were in line with one party's properly admitted expert's projections. Duquesne Light also contends that the Superior Court did not improperly place the burden on Mader to support the trial

court's award, but, rather, merely held that, because the jury's award of past and future medical expenses was supported by the record, and because there was no legal precedent mandating a new trial on all damages, the trial court abused its discretion in ordering a new trial on all damages. Duquesne Light distinguishes the cases cited by Mader as inapt and suggests that certain of these decisions actually are consistent with Duquesne Light's position, as they limit a new trial to a discrete error in the jury award.

Duquesne Light argues that past medical expenses were stipulated to by the parties and the trial court instructed the jury to award that amount. Similarly, Duquesne Light offers that the trial court erred in awarding a new trial on past medical expenses on the rationale that Mader was likely to incur new medical expenses between the first and second trial. This reasoning, according to Duquesne Light, is flawed, as Mader was already awarded future medical expenses in the first trial; thus, any new medical expenses that Mader might incur were already awarded to him. Additionally, Duquesne Light refutes the trial court's explanation that a new trial on all damages avoids confusion that may result if the jury hears extensive evidence of Mader's pain and suffering during his various medical procedures, but is denied the ability to award past medical expenses. Indeed, Duquesne Light maintains that pain and suffering is a discrete issue from medical expenses, and juries routinely consider awards for pain and suffering independently of awards for medical expenses. Ultimately, Duquesne Light contends the appropriate standard is whether, considering Mader's motion for a new trial, the jury's verdict was so contrary to the evidence that it shocked one's sense of justice; here, it asserts the award of stipulated damages that the jury was directed to enter on the verdict slip simply cannot shock one's sense of justice.

Similarly, Duquesne Light contends that, with respect to future medical expenses, the parties' experts offered conflicting estimates of appropriate damages. As resolving

conflicting evidence is solely within the province of the jury, and as, according to Duquesne Light, Mader admitted that the jury's award for medical expenses was within the range of costs testified to by the parties' life care planners, the jury's verdict was appropriate. Moreover, Duquesne Light asserts that the trial court erred in ordering a new trial on these damages. While the trial court reasoned that it was impossible to know how the jury arrived at $55,474.44 for future medical expenses, and surmised that the jury desired to reach a round number of $500,000, Duquesne Light claims that mathematical certainty is not required to uphold a verdict; rather, only a reasonable relationship with the plaintiff's loss is required. Therefore, Duquesne Light contends the Superior Court's order should be affirmed.

Before we turn to our analysis of the issues before us, it is beneficial to reiterate what is agreed to by the parties, found by the lower tribunals, and what is at issue in this appeal. As noted above, both the trial court and the Superior Court concluded that Mader is entitled to a new trial on noneconomic damages. Additionally, the courts determined, and Mader agrees, that he is entitled to a new trial on past and future earnings. While Duquesne Light contested the lower courts' determination on past and future earnings, we denied allocatur on that issue, and, thus, it is not before our Court in this appeal. Finally, while Mader goes on at some length about a trial court's broad discretion to award a new trial generally, the question before us is more discrete. At its core, the related questions before our Court are whether, generally, a new trial may be awarded on distinct damages, and, more specifically, whether the trial court had discretion to order a new trial on past and future medical expenses primarily because it found the jury's determination on compensatory damages for pain and suffering and lost earnings to be defective. With this understanding, we proceed with our analysis.

By way of background, we note that, in our Commonwealth, the right to a trial by jury in a civil action is fundamental to our system of law. *Sisko v. Britz*, 790 A.2d 1000 (Pa. 2002). Our civil dispute resolution framework is founded on the impartiality and integrity of a jury's verdict. The citizens selected, and who serve, as jurors stand as the ultimate trier of fact, and the sole determiner of liability and damages. Jurors are given great leeway in arriving at these decisions. Critically, jurors are "free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 39 (Pa. 2011).

While a jury's verdict and damages award are generally insulated from challenge, the grant of a new trial may be required to achieve justice in those instances where the original trial, because of taint, unfairness, or error, produces something other than a just and fair result, which is the principle goal of judicial proceedings. *Dornon v. McCarthy*, 195 A.2d 520, 522 (Pa. 1963). As we explained in *Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994), a jury verdict may be set aside as inadequate "when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Where the jury's verdict is so contrary to the evidence as to 'shock one's sense of justice' a new trial should be awarded." *Id.* (citations omitted). We cautioned that it was within "the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by the witnesses," and if the verdict "bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgement for the jury's." *Id.* Yet, where "the injustice of the verdict 'stand[s] forth like a beacon', a court should not hesitate to find it inadequate and order a new trial." *Id.* (citations omitted).

A new trial may not be required on all issues, but only those that resulted from legal error. Our Court in *McNeil*, reviewing two types of claims for damages — one for cancer claims and one for non-cancer claims — set forth the general tenet that, where trial errors are specific and discrete, the grant of a new trial should encompass only those issues:

> This Court has consistently held that where the only trial errors disclosed in the record deal with specific and discrete issues, the grant of a new trial should be limited to those issues. In *Messer v. Beighley,* 409 Pa. 551, 187 A.2d 168 (1963), this Court held that where errors deal exclusively with damages, the new trial should be limited to damages. Likewise, in *McKniff v. Wilson,* 404 Pa. 647, 172 A.2d 801 (1961), we held that since the only meritorious assignments of error involved damages, retrial should concern that issue alone. *See also Richardson v. LaBuz,* 81 Pa.Cmwlth. 436, 474 A.2d 1181 (1984) (limiting grant of new trial to the statute of limitations issue where the defendant's negligence was fully and fairly litigated); and *Hose v. Hake,* 412 Pa. 10, 192 A.2d 339 (1963) (limiting new trial to the issues of damages). The new trial ordered in the instant case, therefore, should be limited to the non-cancer claims, the lung cancer claim having already been fully litigated and resolved by a jury.

*McNeil*, 680 A.2d at 1148.

Thus, a threshold question in this appeal is whether this general proposition — limiting new trials to only those matters in which error is assigned — applies to discrete and specific forms of damages. On this specific question, we find the case law offered by the parties to be of limited value. The decisions offered by Mader certainly demonstrate that, in certain instances, even when the jury properly awarded certain damages, but erroneously failed to award other damages, courts have remanded for a new trial on *all* damages. *See, e.g., Womack*; *Hobbs*; *Monschein*. The difficulty with these cases is twofold: first, they give little or no explanation for reaching the decision to remand for a new trial on all damages; second, it does not appear the division of damages

on remand issue was raised or extensively argued. For its part, Duquesne Light proffers decisions in which the scope of a new trial on damages was limited to those in which error was found. *See*, *e.g.*, *Hyang*; *Campagna*; *Adams*. Yet, the decisions presented by Duquesne Light suffer from the same limitations as those cited by Mader.

While the decisions offered by the parties are neither definitive, nor largely beneficial to resolving the issue before us, at a minimum, they stand for the principle that there is no *per se* rule regarding the scope of damages at a new trial. Nor can we discern any principled reason why all types of damages should be considered, *ipso facto*, indivisible for purposes of a new trial. Distinct types of damages speak to different injuries. Medical expenses (past and future), pain and suffering (past and future), and lost wages (past and future) represent distinct forms of compensatory damages, providing relief for different harms, and requiring distinct supporting evidence. Indeed, these damages may be listed separately on the verdict slip and may warrant their own jury instructions.

Our understanding that damages are divisible is supported by our Rules of Civil Procedure. Specifically, Pennsylvania Rule of Civil Procedure 223.3 governs the conduct of trials for bodily injury or death, and outlines jury instructions for noneconomic loss. Even within the realm of noneconomic loss, such losses are considered discrete and may be provided separately on a verdict slip. The Rule states:

> In any action for bodily injury or death in which a plaintiff has raised a claim for a damage award for noneconomic loss that is viable under applicable substantive law, the court shall give the following instructions to the jury.
>
> The plaintiff has made a claim for a damage award for past and for future noneconomic loss. There are four items that make up a damage award for noneconomic loss, both past and future: (1) pain and suffering; (2) embarrassment and humiliation; (3) loss of ability to enjoy the pleasures of life; and (4) disfigurement.

Pa.R.C.P. 223.3.

Thus, we find that certain categories of damages may be conceptualized as discrete and independent of other forms of damages, just as liability and damages have been found to be severable for purposes of a new trial. *See McNeil*; *see also* Pa.R.C.P. 227.1(a)(1) ("After trial and upon the written Motion for Post-Trial Relief filed by any party, the court may . . . order a new trial as to all or any of the issues."). Because of this, we reject the notion that a *per se* rule exists requiring a remand for all damages whenever a new trial is awarded on certain damages. All damages may be relitigated in a new trial, or certain discrete damages may be upheld and excised from the award of a new trial on other damages. This being the case, and consistent with other areas of jury verdict error, we find that, as an initial matter, a trial court has discretion to order a new trial on certain types of damages, exclusive of other types of damages that were properly awarded by a jury in the first trial.

What seemingly has not been articulated by our Court, and, thus, is a matter of first impression, is the standard by which a trial court should make the determination of the proper scope of an award of a new trial. In the context of determining whether a new trial should be granted solely for damages, or for damages and liability, we have declared the following standard: "A new trial limited to the issue of damages will be granted where: (1) the issue of damages is not 'intertwined' with the issue of liability; and (2) where the issue of liability has been 'fairly determined' or is 'free from doubt.'" *Kiser*, 648 A.2d at 8 (citations omitted).

We believe it appropriate to apply a similar standard to the question of whether a new trial should be granted for all damages, or just certain damages tainted by jury error. Thus, we hold that, when faced with the question of the full or partial granting of a new trial on damages, a trial court should discern whether the properly awarded damages in

the first trial were "fairly determined," and, if so, whether they are sufficiently independent from, and are not "intertwined" with, the erroneously determined damages.

We find this standard strikes the appropriate balance between allowing a prevailing party to remedy jury errors through a new trial, while at the same time, upholding jury determinations when possible. Specifically, a plaintiff who rightfully deserves a new trial will have those matters erroneously resolved by a jury reheard by a new jury. Such an approach is also fair to the defense, which will not be required to give its opponent a second chance to recover damages that were properly established and found by the jury in the first trial, and which are otherwise independent from the erroneous damages. Finally, this approach is beneficial to the justice system as a whole, as it preserves the court's and the parties' resources, narrows the scope of retrial, and promotes the finality of jury awards to the fullest extent possible.

Thus, for the above reasons, we hold that there is no *per se* rule with respect to the types of damages to be considered at a new trial, and that trial courts are not mandated to award a new damages trial on all damages. Furthermore, we conclude that a jury's award of certain types of damages may be distinct and independent of the award of other types of damages, so that it is within the discretion of the trial court to award a new trial on all damages or only certain damages. In doing so, however, we stress that a trial court should consider whether the properly awarded damages were fairly determined, and, if so, the interrelatedness of the types of damages and whether the proper damages award can stand independent of the erroneously awarded (or erroneously not awarded) damages.

Applying these principles, we consider the trial court's decision in this matter, and whether it abused its discretion in ordering a new trial on past and future medical

expenses because the jury's determination on noneconomic damages and lost earnings was defective.

Initially, we remind that, pursuant to the *Harman/Morrison* analytical construct discussed above, in determining whether the trial court abused its discretion in awarding a new trial – and specifically, here, in granting a new trial on damages for past medical expenses – we consider the underlying "mistake" and whether the reasons offered by the trial court in ordering a new trial based on this error constituted an abuse of discretion. As for the mistake underlying the grant of a new trial, the matter before us is somewhat unusual, as the parties stipulated to the award of damages for past medical expenses. Specifically, as noted above, the parties stipulated to Mader's past medical expenses in the amount of $444,525.56. Moreover, the trial judge instructed the jury on this stipulation and ordered the jury to award that amount for past medical expenses if it found that Duquesne Light caused Mader's injuries. Under Pennsylvania law, litigants may limit the issues to be considered by the court except for matters affecting the jurisdiction, business, or convenience of the court. *Northbrook Life Ins. Co. v. Commonwealth*, 949 A.2d 333 (Pa. 2008). A stipulation of facts is binding and conclusive on a trial court, although the court may nonetheless draw its own legal conclusions from those facts. *Senex Explosives, Inc. v. Commonwealth*, 58 A.3d 131 (Pa. Cmwlth. 2012). Thus, *per force*, the record supports the jury's award of $444,525.56 for past medical expenses. Accordingly, we turn to the reasons offered by the trial court for encompassing these otherwise validly awarded damages within the grant of a new trial.

As the trial court based its determination to include past medical expenses in its award of a new trial for two reasons, we limit our review to those grounds. *Harman; Morrison*. First, the trial court found that a new trial was appropriate because Mader was likely to incur new medical expenses between his first and second trials. This reasoning,

which is based to some degree upon conjecture, fails to take into account the jury's concomitant award of *future* medical expenses. As the purpose of the award of future medical expenses was to compensate Mader for those medical expenses incurred after the first trial, any future medical expenses, including those incurred between a first and second trial, were already awarded to Mader. Thus, we reject this as a basis to re-litigate past medical expenses at the second trial.

As a second reason, the trial court believed the jury would be confused if it heard extensive evidence of Mader's pain and suffering as a result of the medical treatment provided to him, but was denied the ability to award past medical expenses. As noted above, damages for past medical expenses are discrete and independent from damages for pain and suffering. The former largely constitute objective costs related to medical treatment, while the latter are largely subjective. Related thereto, we find that past medical expenses are not so intertwined with an assessment of damages for pain and suffering as to require a new trial on the first when granting a new trial on the second. Through the admission of relevant evidence and appropriate jury instructions, the trial court should be able to separate the concept of damages for past medical expenses from damages for pain and suffering. For these reasons, we likewise reject this as a basis for allowing past medical expenses to be re-litigated at the new trial. Thus, we hold that the trial court abused its discretion in awarding a new trial on the stipulated past medical expenses.

Turning to the trial court's grant of a new trial for future medical expenses, we first note that the jury was presented with conflicting expert testimony regarding Mader's future medical care and needs. Specifically, Mader's expert witness testified that he would require multiple knee and hip replacements, a part-time personal care aide until he reached the age of 65, and a full-time aide thereafter. Further, he opined that Mader

would need a new house. Conversely, and in stark contrast, Duquesne Light's expert witnesses testified that Mader's wounds were well healed, and that he required little preventative treatment and minor equipment to assist him with his gait. They testified that any cognitive and residual physical issues, such as joint replacement, were pre-existing or due to Mader's failure to comply with his doctor's treatment prescriptions, and were not a result of the accident. Specifically, as noted by the Superior Court, the evidence established that, despite his injuries, Mader was able to travel and lead a fairly active lifestyle; that Mader's injuries did not place him at any greater risk for needing knee and hip replacement surgeries than someone who – like Mader – had a pre-existing arthritic condition; and that, even if he did need surgery, repeated knee and hip replacements would not be necessary. Additionally, the jury also heard testimony offered by Duquesne Light that Mader's condition did not require him to obtain a new home or receive the assistance of a home health aide.

Based upon these competing views of Mader's future medical needs, the jury was provided with differing estimates of the cost of his future medical expenses. Mader's expert life care planner testified that the services and medical care Madar would require going forward would cost $2,183,486. Duquesne Light's expert life care planner on future medical expenses explained that Mader would require preventative care and annual physical therapy sessions, and orthotics resulting in future medical expenses of $42,636.65 to $50,483.67, but that this amount could be increased to account for the cost of a physician-recommended carbon fiber AFO (ankle-foot orthosis). The jury ultimately awarded future medical expenses of $55,474.44, an amount slightly greater than that offered by Duquesne Light's experts.

In granting a new trial on future medical expenses, the trial court offered three reasons for its decision. First, the trial court reasoned that it was impossible to know how

the jury arrived at its $55,474.44 award, but acknowledged that the particular amount was likely the fact that the number, combined with the stipulated past medical expenses, equaled precisely $500,000. The Superior Court rejected this rationale, offering that the jury's award of $55,474.44 for future medical expenses was far closer to the projections of Duquesne Light's experts, and that, in its view, the jury simply resolved the conflicting testimony regarding Mader's future medical needs in favor of Duquesne Light. Thus, according to the Superior Court, the record supported the jury's determination.

We agree. Initially, we note that the plaintiff bears the burden of proof to establish all damages. Related thereto, the jury is free to believe all, part, or none of the evidence, and resolving conflicts in testimony are within the exclusive province of the jury. *Samuel-Bassett*, *supra*. The jury's award *sub judice* was within the range of contrasting expenses offered by the parties' experts, and, in fact, the jury's award of $55,474.44 was slightly more than that proffered by Duquesne Light's expert. Thus, the record supported the jury's award of future damages. As to the trial court's impossibility rationale, we emphasize that a damages award need only bear a "reasonable relation to the loss suffered by plaintiff," *Kiser*, 648 A.2d at 4, and that precise mathematical certainty is not required to uphold a verdict. Here, we cannot find that the jury award, even if arrived at by adding to Duquesne Light's estimates to achieve a round number of $500,000, renders that amount void of record support or lacking in a reasonable relationship to the evidence of Mader's future medical needs.

Related thereto, as a second reason, the trial court found that, because the jury rendered an irrational $0 award for noneconomic damages, it could not have calculated future medical benefits correctly. While both parties and the lower tribunals agree that the $0 award for noneconomic damages was in error, we disagree with the logic of condemning the jury's calculation of future medical expenses due to its failure to award

noneconomic damages. As noted, damages for medical expenses are different in nature from damages for pain and suffering. Furthermore, the record supports the jury's award of future medical expenses, and, again, the dollar amount awarded was slightly greater than the estimates offered by Duquesne Light. That being the case, we reject the notion that, simply because the jury erred in failing to award pain and suffering damages, that resulted in an erroneous award of damages for future medical expenses. Indeed, carried to its logical conclusion, if the jury was so irrational regarding its pain and suffering award that it could not rationally render an award for medical expenses, then no aspects of the jury's decision-making, including its finding of liability, could be allowed to stand. Not even Mader suggests this, and, indeed, he argues that the jury properly reached its liability determination. We, thus, likewise reject this reason relied upon by the trial court as a basis to award a new trial.

Finally, as a third reason for granting a new trial on future medical expenses, the trial court determined that there would be medical expenses incurred during the pendency of the new trial that would no longer be classified as future medical expenses. However, as we concluded with respect to the award for past medical expenses, any future medical expenses, including those incurred between a first and second trial, have already been awarded to Mader. Thus, we dismiss this as a proper basis on which to re-litigate future medical expenses at the second trial. Rejecting the three bases offered by the trial court, we hold that the trial court abused its discretion in awarding a new trial on future medical expenses.

In sum, we find the record supports the jury's award of damages for past and future medical expenses. These types of damages are discrete and are independent from noneconomic damages such as pain and suffering. Furthermore, in the circumstances of this case at least, these damages were fairly determined and are not so intertwined

with the noneconomic damages (to be assessed in the new trial) as to require their being re-litigated as well. Additionally, the jury in the new trial may be entitled to hear evidence about Mader's past and potential future treatment, but only as it relates to his pain and suffering. Nevertheless, with respect to medical expenses, in our view, Mader should not be permitted to re-litigate these damages in a new trial. Thus, we reject the trial court's justifications for awarding a new trial on past and future medical expenses, and, thus, hold that the trial court abused its discretion in this regard. Consequently, for the above-stated reasons, we affirm the Superior Court's order.

Order affirmed.

Chief Justice Saylor and Justices Baer, Donohue, Dougherty and Wecht join the opinion.

Justice Mundy files a dissenting opinion.